**People of the State of Illinois, Plaintiff-Appellee, v. Edward Nelson, Defendant-Appellant.**

Gen. No. 10,793.

Fourth District.

April 20, 1967.

J. Waldo Ackerman, of Springfield, for appellant.

Raymond L. Terrell, State's Attorney of Sangamon County, of Springfield, Richard H. Hollis, First Assistant State's Attorney, and D. Bradley Blodgett, Assistant State's Attorney, for appellee.

237

TRAPP, J.

Defendant appeals from a judgment of conviction and a sentence of one to three years upon two counts of an indictment, each charging acquisition of drugs by fraud and deceit in violation of the Criminal Code of 1961, c 38, § 22–39 (Ill Rev Stats, 1965).

It is defendant's theory that the denial of his motion to suppress evidence violated his constitutional rights and that the prosecution failed to prove the purchase of any narcotic as alleged in the indictment. Upon the motion to suppress, it is defendant's theory that evidence and witnesses to the offense were discovered through identification of the defendant at a police "lineup" at a time when no warrant was outstanding, or charge pending on the offenses at issue.

On March 30, 1965, defendant was in jail, having been unable to post bond while awaiting prosecution on other charges. On April 15, 1965, officers of the Illinois Narcotics Bureau discovered defendant's name on the exempt narcotics registers of the Osco Drug Store and of the Watt Brothers Drugs, both in Springfield, Illinois, showing the purchase of two exempt medicinal preparations within 48 hours, i. e., on March 4, 1965. The narcotics officers procured members of the Sheriff's department to take the defendant with four other negro youths of comparable age and stature to the city police station to be placed in a "lineup." Defendant refused to go and stated that he wanted to talk with his counsel, appointed to represent him on other pending charges. At the police station defendant called his appointed attorney, who advised him to refuse to appear in the "lineup," and defendant persisted in his refusal to participate in the procedure. The record is not clear as to whether the other prisoners were to be in the "lineup" in connection with their offenses, but there appears to be a reasonable inference that they were only to be viewed for purposes of comparison with the defendant.

Upon defendant's refusal to go into the "lineup" room, clerks and employes of the respective drug stores walked through a corridor where defendant was waiting, at which time there was some opportunity for them to observe him. Defendant testified to his strenuous efforts to conceal his face. The testimony of the officers conflicts with that of the defendant as to whether defendant was jerked to his feet in such a manner as to disclose his features. It is not clear from the record as to whether or not any of the witnesses did, in fact, identify the defendant in the corridor of the police station, but there is no question that they did make such identifications at the trial, and there is, in fact, no evidence which questions the identity of the defendant as making the purchases and signing the exempt narcotics register and writing his then address.

At a hearing upon the motion to suppress, the trial court found that there was, in fact, a complaint filed and an unserved warrant outstanding upon these charges at the time of the aborted "lineup." No evidence contradicts this conclusion.

The witnesses identifying the defendant at the trial as making the several purchases were employes of the respective pharmacies who made the sales in evidence. The investigation of the respective exempt narcotic registers disclosed their several identities, and the fact that they were requested to view the defendant for purposes of identification contradicts the contention that they were discovered through the questioned "lineup" procedures. Such circumstances do not come within the ambit of People v. Albea, 2 Ill2d 317, 118 NE2d 277, wherein a witness was discovered, and his identity ascertained, during the course of, and as a result of an illegal search. This person was suppressed in the sense that his testimony was ruled inadmissible.

■■ Defendant urges that he was deprived of the equal protection of the law by being compelled to par-

239

ticipate in the "lineup." He relies upon Butler v. Crumlish, 229 F Supp 565 (1964), wherein the District Court for the Eastern District of Pennsylvania issued a temporary injunction restraining police officers from placing an indigent prisoner in a "lineup" upon the statement that the procedure produced a material distinction between defendants who could make bail and those who could not, so that while in custody they could be required to participate in the "lineup." It was stated that the "lineup" procedures made the defendant an active participant in police investigation. The court's opinion conceded, however, that the police could permit witnesses to view the accused in his cell, or in jailhouse activities. This opinion stressed the fact that in the "lineup" procedure the prisoner was required to stand upon a brightly lighted stage, and to speak and move as instructed for purposes of identification.

This conclusion was expressly repudiated by the Court of Appeals for that District in United States v. Evans, 359 F2d 776 (1966), where defendants appeal their conviction. While being held upon another charge, defendants were placed in a "lineup" and identified as bank robbers. Upon appeal of the conviction, that court held that the process of identification did not deprive them of any constitutional rights. In Rigney v. Hendrick, 355 F2d 710 (1965), petitioners sought to enjoin officers from placing them in a "lineup" as being a violation of the Civil Rights Act. Finding that there was neither denial of due process, equal protection of the law by reason of discrimination against indigents without bail, nor violation of the privilege against self-incrimination, the court held that identification was a permissible police activity. The Supreme Court denied certiorari. 384 US 975.

Apart from the practical aspects as to whether or not the best interests of an accused are better served when witnesses are required to pick out and identify

240

him from a group of similar individuals, the evidence upon the hearing discloses that the "lineup" planned by the narcotics officers was, in fact, aborted when the defendant, as advised by counsel, refused to proceed in the "lineup" room.

 Upon the contention that defendant was deprived of the right to counsel by reason of this "lineup," the record discloses that no "lineup" procedures were, in fact, employed after counsel had advised the defendant to refuse to appear therein, but, in fact, counsel's advice was honored. Again, under the facts of this case, we doubt that the claim of deprivation of right to counsel is an issue as a matter of law. Such right to counsel is related to accused's privilege against self-incrimination. As noted in Schmerber v. California, 348 US 757, 16 L Ed2d 908, 86 S Ct 1826, such privilege against self-incrimination does not insulate against fingerprinting, photographing or performing acts incident to identification. The Supreme Court distinguished evidence of the physical characteristics of the defendant from his testimonial privilege against self-incrimination, and held that there was no issue presented with respect to the ability of counsel to assist the defendant in any rights which he did possess, so that the claim of being deprived of the right of counsel must be rejected. Such conclusion is equally applicable here. See also Rigney v. Hendrick, 355 F2d 710.

 Defendant urges that since no chemical analysis of the items purchased was placed in evidence, there was a failure to prove that the preparations obtained were narcotics. It seems more correct to say that the issue is whether or not defendant obtained exempt medicinal preparations described in the Uniform Narcotic Drug Act, chap 38, § 22-12 (Ill Rev Stats, 1965). The courts have recognized the distinction between narcotics as such, and the exempt medicinal preparations. People v. Bowlby, 51 Ill App2d 51, 201 NE2d 136; People v.

Williams, 23 Ill2d 549, 179 NE2d 639; People v. Hines, 30 Ill2d 152, 195 NE2d 712 and Folenius v. Eckle, 109 Ohio App 152, 164 NE2d 458.

 The requirements of a chemical analysis in the case of an unidentified substance of unspecified origin without evidence of its nature and content is patent. The record in this case, however, discloses without contradiction, the following: (1) the defendant made the purchases using the trade name of the medicinal preparations; (2) that reputable pharmaceutical companies manufactured and distributed the preparations; (3) that the preparations were sold in the original container distributed by the manufacturer; (4) that the respective preparations have accepted standards or formulas specifying narcotics coming within the statutory concentration; (5) that the statute, chap 38, § 22–21 (Ill Rev Stats, 1965) requires the manufacturer to label each package or container showing the kind, quantity and form of narcotic drug contained in the medicinal preparation; (6) that the containers obtained by the defendant were, in fact, labelled by the manufacturers pursuant to such statutory requirement. The Supreme Court has recognized that reputable pharmaceutical manufacturers have established standards for the manufacture of medicinal preparations. People v. Williams, 23 Ill2d 549, 179 NE2d 639.

 In People v. Robinson, 14 Ill2d 325, 153 NE2d 65, the Supreme Court stated that circumstantial evidence may support a conviction under the Uniform Narcotic Drug Act. To prove a violation in that case, it was necessary to identify an unknown substance as a narcotic drug. The three users of heroin testified that the taste of the substance and the reaction induced by it was that of heroin. Similarly, the evidence was that the defendant had sought to purchase heroin. We believe that the chain of circumstantial evidence establish-

242

ing the violation of the statute is stronger in this case than that in People v. Robinson.

 A court must consider the purpose of the statute with regard to the medicinal preparations at issue, and the fact that they are the subject of immediate consumption. To announce the evidential requirement of chemical analysis of each preparation sold as an exempt medicinal preparation would not only render the legislative determinations for naught, but would compound fatuity with the ridiculous. We believe that the circumstantial evidence is sufficient to satisfy the trier of fact of the guilt of the defendant, and that the prosecution has sustained its burden of proof under the evidence. People v. Robinson, 14 Ill2d 325, 153 NE2d 65.

 Count III of the indictment charges that the defendant committed an offense by obtaining an exempt medicinal preparation at Osco's Drug Store by the concealment of a material fact, to-wit, the obtaining of an exempt medicinal preparation at the Watt Brothers Pharmacy, within 48 consecutive hours. The evidence discloses that the purchase at the Osco Drug Store was made between 6:00 and 8:00 p. m. on March 4, 1965. Count IV of the indictment alleges an offense in that the defendant obtained an exempt medicinal preparation from Watt Brothers Pharmacy by the concealment of a material fact, to-wit, a failure to disclose that he obtained an exempt medicinal preparation at the Osco Drug Store within 48 consecutive hours. The evidence is that such purchase was made between 8:00 and 8:30 p. m. on March 4, 1965. It seems apparent as a matter of reason and logic that the purchase alleged in Count III of the indictment could not be made through concealment of the material fact of the subsequent purchase alleged in Count IV. We must conclude that the prosecution has failed to prove the allegation of Count III of

the indictment, and that the conviction upon such count must be reversed. The conviction upon Count IV of the indictment is affirmed.

Affirmed in part.

Reversed in part.

SMITH, J., concurs.

CRAVEN, P. J., dissenting:
The indictment in this case has four counts. Count I charged a violation of section 22–12(6)(e) of the Criminal Code (Ill Rev Stats 1965, c 38, § 22–12(6)(e)), alleging the purchase of paregoric and the subsequent purchase of an exempt narcotic within 48 hours. Count II, likewise, alleged the same offense of two purchases of exempt narcotics within 48 hours. Under this section of the Criminal Code both Counts I and II, therefore, charged unlawful possession of narcotic drugs, which is what the statute makes the offense of two purchases of exempt narcotics within 48 hours. The evidence in this case relates to those two counts.

The judgment of the court, however, makes no reference to either Count I or Count II but the judgment of conviction is based upon Counts III and IV, each of which charges the offense of unlawful acquisition of drugs by fraud and deceit or material misrepresentation in violation of section 22–39 of the Criminal Code (Ill Rev Stats 1965, c 38, § 22–39). I agree with the majority opinion that Counts III and IV are mutually exclusive as a matter of reason and logic. The evidence in this case, in my view, makes no showing of anything sufficient to convict under section 22–39. The judgment of conviction, therefore, was entered upon the wrong counts of the indictment. Counts I and II were undisposed of by the trial court. Those counts are not before

us. People v. Randall, 25 Ill2d 431, 185 NE2d 146 (1962).

Section 121–9 of chapter 38, Ill Rev Stats 1965, provides that, on appeal, "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." Such is the fact here. This court should not affirm a judgment of conviction entered upon the wrong counts of an indictment. I must, therefore, dissent, although I have no disagreement with the language and opinion of the majority as to the issues determined. The omission of the above-related defect is the sole basis for this dissent.