**Kenneth FILLER, Defendant-Appellant,**

v.

**STATE of Indiana, Plaintiff-Appellee.**

No. 1–1280A345.

Court of Appeals of Indiana,
First District.

June 23, 1981.

Harriette Bailey Conn, Public Defender, Susan K. Carpenter, Deputy Public Defender, Indianapolis, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

NEAL, Presiding Judge.

## STATEMENT OF THE CASE

This is an appeal by defendant-appellant Kenneth Filler (Filler) from a decision of the Shelby Superior Court revoking his probation. Filler had been placed on probation for two years following his convictions of escape, a Class D felony, and criminal recklessness, a Class A misdemeanor, for which he received suspended sentences of two years and one year respectively.

We affirm.

## STATEMENT OF THE FACTS

On May 29, 1979, the Shelby Superior Court entered a judgment sentencing Filler to two years imprisonment for escape, a Class D felony, and one year imprisonment for criminal recklessness, a Class A misdemeanor. The court suspended both sentences and placed Filler on probation for two years on the conditions that Filler behave well, incur no violations of the law, and make restitution. On February 7, 1980, a petition to revoke the suspension and probation was filed, alleging that on September 11, 1979, Filler committed two criminal offenses consisting of two sales of a controlled substance, namely lysergic acid diethlamide (L.S.D.). A hearing was held on the petition and the following evidence most favorable to the decision was presented relative to the violation of probation.

Detective Sergeant Robert Schuler, with the aid of a confidential informant, Bobby Cash, was conducting an undercover drug investigation in Decatur County. Schuler became aware of Filler through one Fred Baltus, a suspected drug dealer. On September 11, 1979, Schuler and Cash attempted to purchase drugs from Baltus, but Baltus had none at the time and referred them to Filler. Filler was contacted through Baltus, and all four men, Schuler, Cash, Baltus, and Filler, went to Baltus' house. There, the illicit drug transaction was consummated wherein Filler sold Schuler 12 pills containing L.S.D. for $24. The four talked for another 15 or 20 minutes, and upon parting, Schuler purchased another two pills containing L.S.D. for $4. The men had spent a little more than two hours together. Filler was charged with the sales in the Decatur Circuit Court, and these sales formed the basis of the revocation of probation petition.

## ISSUES

The issues presented for review on this appeal are asserted by Filler as follows:

I. Whether the court erred in permitting two witnesses to identify Filler in court where Filler filed a Motion for Lineup which was granted by the court but never conducted;

II. Whether the court erred in admitting evidence concerning identification of controlled substances, and erred in admitting said substance, where there was not a complete chain of custody;

III. Whether the evidence was insufficient to establish the sale of L.S.D., where there was no proper foundation for identification of the substance sold and the tests conducted were inadequate to establish that the substance was in fact controlled;

IV. Whether the court erred in denying Filler's motion for a continuance to call a necessary witness, Fred Baltus, where said witness' failure to appear surprised defense counsel; and

V. Whether the court erred in refusing to admit polygraph test results offered by Filler.

## DISCUSSION AND DECISION

*Issue I.  Denial of pretrial lineup*

Filler claims the trial court erred in permitting, over timely objection, the in-court identification of Filler by Schuler and Cash. Prior to the hearing the court had granted Filler's motion for a line-up. Insomuch as Filler had already been charged, arrested, and identified, the evident purpose of the line-up was to test the reliability of Schuler's and Cash's identifications. The line-up was never conducted because, according to the prosecuting attorney, Filler could not be found to participate in it. Filler made no pretrial attempt to enforce the ruling.

■ Filler has cited no authority for the proposition that an accused has a right to have a pretrial line-up conducted to test the perception of the identification witnesses. The cases relative to pretrial lineups as well as other pretrial identification procedures are generally concerned with impermissibly suggestive pretrial procedures alleged to taint the in-court identification. That, of course, is totally absent here. The cases hold that regardless of error in pretrial identification procedures or their suggestiveness if there is sufficient basis for identification independent of the pretrial procedure, there is no error in permitting the in-court identification. *See, e. g., Long v. State,* (1979) Ind., 385 N.E.2d 191; *Swope v.*

*State,* (1975) 263 Ind. 148, 325 N.E.2d 193; *Bennett v. State,* (1981) Ind.App., 416 N.E.2d 1307. To determine whether an independent basis for the in-court identification exists a "totality of circumstances" standard is used. *Young v. State,* (1979) Ind., 395 N.E.2d 772. .

■ September 11, 1979, Schuler and Cash met Filler and Baltus and spent a little more than two hours with him in broad daylight. We conclude that a sufficient basis exists for the court to allow an in-court identification. Filler claims that the prior contact between himself, Schuler, and Cash occurred eight months prior to the hearing at which the in-court identifications were made, that on this occasion Schuler and Cash were drinking, and that the contact was relatively brief. He appears to contend that these circumstances are such as to render the basis for the identifications insufficient to support the in-court identification. We disagree. These factors go to the weight to be given the testimony and not its admissibility. There was no error committed by the court in allowing the in-court identification.

We further note that Filler does not, in his testimony or his version of events, really challenge that he was with Schuler and Cash, or was the person involved. His entire defense was that Baltus, and not he, conducted the sale of the L.S.D. and received the money. We see no prejudice to Filler's case.

*Issue II.  Chain of custody*

■ At trial, State's Exhibits No. 1 and No. 2, the tablets seized at the time of the sale, were admitted into evidence. George Smith, a chemist at the State Police Laboratory, testified that four tests were conducted on the pills which indicated the presence of L.S.D. In this issue, Filler contends that these exhibits and Smith's testimony relative to his findings were improperly admitted into evidence because the State failed to establish a proper chain of custody of the physical evidence between the time the items were seized and the time the tests were conducted.

Facts adduced at trial reveal that on September 14, 1971, after Schuler seized the pills, he mailed them in a sealed package by certified mail, return receipt requested, to the State Police Laboratory for testing, and later received a green card attesting to the receipt of the package by the laboratory. Smith received the package on September 17, 1979, but he was not the person who acknowledged receipt on the green card. At the time Smith received the package, the seal was intact and the package bore the certified mail numbers. Neither the person who signed for the package nor any intermediate handler or handlers of the package testified as to the custody of the package during the time between receipt and delivery to Smith.

We think *Gilliam v. State*, (1978) Ind., 383 N.E.2d 297, a case very similar on its facts relative to this issue, is dispositive. There the court said:

"Appellants challenge the admissibility of the two tin foil packets of heroin on the grounds of an allegedly inadequate chain-of-custody.

Sergeant Schultz placed the packets in his packet after appellant Braxton gave them to him. After leaving the Braxton house he placed them in a plastic envelope sealed with 'evidence tape' which disintegrated upon removal. Schultz wrapped the envelope for mailing and sent it by registered mail to the State Police laboratory in Indianapolis. The chemist who analyzed the heroin testified that he received the package still wrapped and bearing the registered mail receipt stub. The envelope within was still sealed with evidence tape. The chemist did not receive the package from the mail carrier; the receipt was signed by a lab technician, who apparently gave the package to a secretary who gave it to the chemist.

Appellants contend that since the secretary and technician who handled the evidence did not testify concerning their handling of the evidence, the chain-of-custody shown was incomplete. We believe that it was not. The purpose of the requirement that a chain-of-custody be shown is to eliminate the possibility of tampering, loss, or substitution of the evidence. *Graham v. State*, (1970) 253 Ind. 525, 255 N.E.2d 652. Here the possibility of tampering was precluded by the sealing of the envelope, that of loss or substitution by the recording of the registered mail number by both Sergeant Schultz and the chemist. These precautions give 'reasonable assurance that the exhibit has passed through the various hands in an undisturbed condition.' *Guthrie v. State*, (1970) 254 Ind. 356, 363, 260 N.E.2d 579, 584, and obviate any need for the testimony of the technician, secretary, and any postal employees who handled the sealed package in transit."

383 N.E.2d at 300.

On this issue Filler's contention is not well taken.

*Issue III. Inadequacy of testing techniques*

■ George Smith, the State Police chemist, testified that he ran four tests on six tablets of Exhibit No. 1 and one tablet of Exhibit No. 2. The test results reflected that the tablets contained L.S.D. Filler argues that the techniques used were insufficient as a matter of law to conclusively show the presence of L.S.D.

In *Schwartz v. State*, (1978) Ind.App., 379 N.E.2d 480, the appellant complained of the admission of test results concerning a substance alleged by the State to be L.S.D. when owing to the small amount of the substance seized by the State, the substance was completely exhausted during the testing procedures. The appellant claimed that the destruction of the contraband rendered it unavailable to the appellant for independent examination and denied him due process of the law. Thus writing to an issue dissimilar to that presently under consideration, Judge Hoffman wrote:

"The defendant was able to thoroughly cross-examine the chemist and to raise the issue of doubt as to the conclusiveness of these tests. It was then the duty of the jury to weigh the credibility of the

witness along with the evidence present-ed."

379 N.E.2d at 487.

Similarly, Filler was able to cross-examine the chemist Smith; the court as the finder of fact, we may presume, appropriately weighed the evidence.

Filler offers no authority for his proposition that, in order for evidence of chemical tests to be admissible, the tests must conclusively exclude the possibility that substances other than that identified are present in the material tested. Filler cites one case under his argument, *Guyton v. State*, (1973) 157 Ind.App. 59, 299 N.E.2d 233. It is totally inapposite to the issue raised; *Guyton* concerned the qualifications of the expert whose opinion testimony was challenged. Filler does not challenge Smith's qualifications.

■ Other evidence indicating that the substance contained L.S.D. include Filler's identification of the substance as L.S.D. during the sale, and Filler's reference to the substance as L.S.D. at trial when crediting the possession and sale to Baltus.

There was no error here. We are of the opinion that the proof was sufficient.

*Issue IV. Continuance*

■ In this issue Filler argues that the court erred in denying his motion for a continuance to call a necessary witness, the ubiquitous Fred Baltus. Though he had not subpoenaed Baltus, and there is no record, other than counsel's naked assertion, that the State had subpoenaed him, he claimed surprise that Baltus had not come to the trial. Near the end of his presentation of evidence, Filler announced that he wanted to call Baltus. The trial judge said that he would not grant a continuance. The record does not show Filler had filed a formal written motion, or tendered any explanation as to why he had not subpoenaed Baltus, or what he might have testified to. A similar situation existed in *Royal v. State*, (1979) Ind., 396 N.E.2d 390. There the court affirmed the trial court's refusal to grant a continuance. It first noted that it was not error for the trial court to refuse a continuance which was never requested, citing *Brown v. State*, (1979) Ind., 385 N.E.2d 1148. The court further stated that if the exchange could be construed as a request for a continuance, such a request failed to comply with Ind.Code 35-1-26-1 which establishes the procedure for the postponement of a trial because of an absent witness. Among other things that statute requires an affidavit showing the materiality of the evidence, due diligence on the part of the defendant to obtain it, where the evidence may be, whereabouts of the witness, what the witness is expected to testify to, and that the witness's absence was not procured by the defendant. The court then held that a ruling on a motion not in compliance with the statute is discretionary with the trial court, and will be reversed only on a clear showing of abuse of discretion, citing *Atkins v. State*, (1977) Ind.App., 370 N.E.2d 985.

Filler has made no such showing here.

*Issue V. Admission of polygraph tests*

■ Filler claims error in the court's refusal for him to testify to the results of a polygraph test, taken ex parte, without stipulation or agreement with the State on taking it or its admissibility. Though Filler concedes the rule announced in *Pavone v. State*, (1980) Ind., 402 N.E.2d 976, that results of polygraph tests are inadmissible in criminal prosecutions absent waiver or stipulation of the parties, he argues that it would be admissible in a trial before the court with no jury being involved, as here. He cites no authority that supports this novel theory. We know of none. The trial court's ruling was correct.

Filler has demonstrated no reversible error. Further, the record contains substantial evidence of probative value in support of the trial court's determination that a violation of the conditions imposed upon Filler's probation had been proven by a preponderance of the evidence. That is all that the appropriate statute requires. Ind. Code 35-7-2-2(d) (Supp.1979).

Affirmed.

ROBERTSON and RATLIFF, JJ., concur.