Benjamin C. COPELAND, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 1–481A138.

Court of Appeals of Indiana,
First District.

Jan. 18, 1982.

John D. Clouse, Michael C. Keating, Laurie A. Baiden, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Aimee L. Kolze, Deputy Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

Benjamin C. Copeland (Copeland) appeals his conviction of dealing in a narcotic, Ind. Code 35–48–4–1. Copeland was found guilty of two counts of dealing in hydromorphine.

We affirm in part and reverse in part.

The facts most favorable to the State disclose that Copeland was contacted by a police informant, Nathanial Ussery (Ussery), who telephoned Copeland on November 13, 1978. Ussery called Copeland from the police department and requested to purchase dilaudids, a controlled substance, from Copeland. Copeland acknowledged that he had the drug. Ussery was then searched and given a body microphone. The police gave Ussery one hundred forty dollars to purchase the drugs and accompanied him to Copeland's residence. Once inside Copeland's house, Ussery exchanged the money for four pills. Ussery attempted to leave the house with the pills, but Copeland became suspicious of the person in the car and required Ussery to use them in his presence. At this point, an argument ensued and Copeland gave Ussery his money back in exchange for the drugs. Ussery stated he would come back alone and left.

Ussery met with police again on November 22, 1978. Ussery was searched, given a body microphone, and given money for the

purchase. Ussery was accompanied by his girl friend for the purchase. Ussery again purchased four pills and was told he could not leave with the drugs. Ussery and his girl friend injected one pill each. Ussery hid the two remaining pills in his pocket and later turned these drugs over to the police. An expert witness for the State testified at trial that the pills, which had the trade name of dilaudid, contained hydromorphine.

Copeland argues on appeal that the evidence established entrapment, that there was insufficient evidence to prove the substance involved in the initial sale was hydromorphine, that the jury verdict amounted to an acquittal on count one, and that the trial court erred in refusing to give certain instructions tendered by Copeland.

■ Copeland contends that the evidence established entrapment as a matter of law. The elements of the defense of entrapment are contained in Ind.Code 35–41–3–9, which provides:

ENTRAPMENT.—(a) It is a defense that:

(1) The prohibited conduct of the person was the product of a law-enforcement officer, or his agent, using persuasion or other means likely to cause the person to engage in the conduct; and

(2) The person was not predisposed to commit the offense.

(b) Conduct merely affording a person an opportunity to commit the offense does not constitute entrapment.

There is no doubt that the police, through their informant, participated in the criminal activity with Copeland. When there is evidence that a police officer or agent has participated in the sale of a controlled substance, the State must present evidence showing the defendant's predisposition to commit the criminal act. If the police merely provided the defendant an opportunity to commit the offense, he cannot rely on the defense of entrapment. The question of predisposition is a determination of the subjective intent of the accused and is a question for the trier of fact. *Silva v. State*, (1980) Ind.App., 410 N.E.2d 1342.

■ Upon review, this court neither weighs the evidence nor judges the credibility of witnesses. Rather, we look to the evidence most favorable to the State and all reasonable inferences too drawn therefrom. If there is evidence of probative value to support the conclusions of the trial court the conviction will not be overturned. *Pettit v. State*, (1972) 258 Ind. 409, 281 N.E.2d 807. With this standard in mind, there was sufficient evidence for the jury to conclude that Copeland was predisposed to commit the offense. The evidence established that Ussery telephoned Copeland, who informed him he had dilaudids to sell. At trial Copeland admitted to being a user of dilaudids. The State presented evidence that Copeland made two separate sales and brought two counts against Copeland. The first sale, count one, was rescinded because Copeland became suspicious. Copeland advised Ussery to return alone at another time. Ussery returned and consummated a sale. The second sale was the basis of count two. There was sufficient evidence for the jury to conclude that Copeland was predisposed to sell dilaudids.

■ The second issue presented by Copeland is whether there was sufficient evidence that the substance involved in count one was hydromorphine. The basis of count one was the initial sale of dilaudids. Since the sale was rescinded, there was no chemical analysis performed on the drugs. The question of sufficiency of the evidence in drug offenses was discussed in *Slettvet v. State*, 258 Ind. 312, 280 N.E.2d 806, where our supreme court stated:

However, when the drugs themselves are not placed into evidence and there is no expert testimony based on a chemical analysis, then there must be testimony based of someone sufficiently experienced with the drug indicating that the substance was indeed a dangerous drug.

258 Ind. 316, 280 N.E.2d 808.

The State qualified Ussery as an expert witness. Copeland argues that Ussery lacks the necessary qualifications to be an expert.

The determination of whether a witness is qualified to testify as an expert is within the sound discretion of the trial court, whose ruling will not be disturbed absent an abuse of discretion. The qualifications of an expert may be established by practical experience as well as by formal training. *Epps v. State*, (1977) 267 Ind. 177, 369 N.E.2d 404.

■ The trial court did not abuse its discretion·in allowing Ussery to testify as an expert witness. Indiana allows a drug addict to be qualified as an expert witness. *Pettit v. State, supra.* The State demonstrated that Ussery was a drug addict who had taken drugs for over thirteen years. While in prison, Ussery was involved in a drug prevention program where he studied various· books and pamphlets. Ussery admitted that he previously used and sold dilaudids. Ussery testified that he had seen dilaudid pills "probably a million times". The State demonstrated that Ussery had sufficient lay experience to testify as an expert.

■■ Copeland also argues that the evidence is insufficient for count one because Ussery merely identified the substance by sight and did not inject, inhale, or ingest the· substance. The State correctly asserts that the identity of a drug can be proved by circumstantial evidence. The circumstantial evidence, to be sufficient to affirm a conviction, must consist of opinion testimony of someone sufficiently experienced with the drug who identifies the substance. *Locklayer v. State*, (1974) 162 Ind.App. 64, 317 N.E.2d 868. Although Ussery was a properly qualified expert, we remain unpersuaded that his testimony constituted sufficient evidence. Ussery's testimony did not illuminate how he identified the drug, that is, whether the pills had any distinguishing markings or any other method to determine that the substance was dilaudid. Our examination of the relevant case law has failed to reveal a conviction which was sustained by merely visual identification alone.

In most of the cases, the opinion testimony was based upon physiological reactions to the drug as compared to prior experiences with drugs.[1] *See, Slettvet v. State, supra; Pettit v. State, supra.* This court is aware of the difficulties that law enforcement agencies confront with illegal drug traffic, but we believe that there must be some evidence establishing the distinguishable characteristics of the substance. To hold otherwise would seriously infringe upon the defendant's presumption of innocence and the standard of proof beyond a reasonable doubt. In *Slettvet v. State, supra*, our supreme court stated:

> We take judicial notice of the frightening rise of illicit drug use occurring in this country which is rapidly approaching epidemic proportions. However, we cannot allow this fact to result in a lessening of the State's requirement of proving each element of the crime beyond a reasonable doubt for this requirement has long been a metaphysical cornerstone of our criminal law.

258 Ind. 318, 317 N.E.2d 874.

Accordingly, the conviction pursuant to count one is reversed. However, since Copeland was convicted on two counts, it is necessary to examine other issues raised in this appeal.

The third issue Copeland presents is whether the initial verdict of count one should operate as an acquittal to the conviction for dealing. Since we previously held that insufficient evidence .exists to sustain this count, our review of this issue is precluded.

■ Finally, Copeland alleges the trial court erred in refusing to give instructions and in modifying an instruction. The refusal of a trial court to give a tendered instruction is not reversible error if the instruction incorrectly states the law or if the substance of the instruction was adequately covered by other instructions given by the trial court. *Hall v. State*, (1980)

---

1. We are not holding that visual identification constitutes insufficient evidence *per se*, but that there must be something distinctive from the appearance of the substance, such that it is not merely a fungible good.

Ind., 405 N.E.2d 530. Instructions should be read as a whole and the impact of the entire instruction should be considered in determining reversible error. *Richmond v. State*, (1979) Ind., 387 N.E.2d 1312.

■ Copeland argues the trial court erred in modifying his instruction on entrapment by deleting language that the State must prove beyond a reasonable doubt that the defendant was predisposed to commit the offense. Copeland alleges the trial court also erred in not giving another instruction on reasonable doubt in regard to entrapment. The trial court submitted two final instructions and four preliminary instructions covering reasonable doubt and burden of proof. When reviewing the instructions as a whole, we cannot conclude the trial court committed reversible error by giving separate instructions on this issue.

■ Copeland also argues that the trial court erred in refusing to give two instructions on conflicting evidence and the presumption of innocence. The trial court read an instruction dealing with conflicting evidence and, as previously discussed, instructions on reasonable doubt. The substance of Copeland's instructions were covered by other instructions given by the trial court. Accordingly, no reversible error resulted from the refusal to give these two instructions.

Copeland alleges that the trial court erred in refusing to give instructions on a lesser included offense. Dilaudid is also a legend drug as defined in Ind.Code 16–6–8–1 *et seq.* The sale of legend drugs is subject to the regulations contained in Ind. Code 16–6–8–3. The conviction of any offense under this act is a class D felony. Ind.Code 16–6–8–10. Copeland submitted an instruction concerning sale of a legend drug and argues that the trial court should not have refused this instruction. Copeland argues that the sale of a legend drug is a lesser included offense of dealing in a narcotic because the same elements necessary for the narcotic conviction are also necessary for the legend drug offense. Copeland asserts that since dilaudid is a legend drug

as well as a narcotic, he could not commit one offense without committing the other.

A leading case on instructions for lesser included offenses is *Roddy v. State*, (1979) Ind.App., 394 N.E.2d 1098, where this court discussed the two step analysis used for these questions. The first step is to determine whether the lesser offense is included within the crime charged. The second step is an examination of the evidence which comprises the charged offense and the included offense. In the first step, it is necessary to examine the statutes which define the offense together with the factual allegations contained in the charging instrument, and determine: a) whether every essential element of the lesser included offense was committed during the course of the crime, and b) whether each essential element of the lesser offense constitutes an essential element of the greater offense.

■ In the present case, the State has different elements of proof in order to sustain conviction of both offenses. To convict Copeland of selling a legend drug, the State has to prove that the accused has sold a drug which has been determined to be dangerous by the Secretary of Health, Education, and Welfare. Essentially, the State must prove that the accused has been engaged in unauthorized distribution of a prescription drug. The State has additional elements of proof to convict Copeland of dealing in narcotics. This offense requires proof that the substance involved is a narcotic, which by definition, is a substance produced directly or indirectly by extraction from substances of vegetable origin. Ind. Code 35–48–1–1. Since we hold that the State has different elements of proof for these two offenses, the sale of a legend drug is not a lesser included offense of dealing in narcotics.

■ Even if this court were to assume that the sale of a legend drug was a lesser included offense, the trial court did not err in refusing the instruction. The second step of our analysis requires an examination of the evidence and a determination of whether there exists evidence of probative

value to establish the accused's commission of the elements of the included offense. If said elements have been established, then it is necessary to determine whether there exists a serious dispute as to whether the accused has committed the distinguishing additional element(s) of the charged offense. If there is a serious dispute over the distinguishing elements, the trial court should give the instructions on the lesser included offense. If there is no dispute over the accused's commission of the distinguishing element(s) then no instruction on the lesser included offense need be given. *Roddy v. State, supra.* The evidence did not support the giving of a lesser included offense instruction because there is no dispute that the substance related to count two is a narcotic as defined in IC 35–48–1–1.

 There exists duplicity in the provisions of the Legend Drug Act and the crimes dealing with controlled substances. The Legend Drug Act is included in Title 16 of the Indiana Code. Although the statute provides that any violation of IC 16–6–8–3 is a class D felony, our examination of the statute reveals that it is primarily designed to safely regulate the distribution and use of prescription drugs. The statutory provisions dealing with controlled substances, Ind.Code 35–48–1–1 *et seq.*, are criminal statutes. While both the Legend Drug Act and the offenses relating to controlled substances prohibit similar conduct, the duplication allows prosecutors discretion. It is well settled that where a defendant commits an act which is in violation of more than one criminal statute, absolute discretion is vested in the State to decide which statute(s) the defendant will be charged with violating. *Adams v. State,* (1974) 262 Ind. 220, 314 N.E.2d 53. The State had the discretion to charge Copeland with violating IC 35–48–1–1 and IC 35–48–4–1.

Copeland also tendered an instruction ranking the possible offenses that of which he could be convicted and the class of the underlying felonies. The instruction contained language on legend drugs. Since we have determined that the trial court did not err in refusing the instruction on lesser included offenses, it was not erroneous to refuse this instruction. It must be noted that the trial court did submit an instruction which ranked the offenses of dealing and possession of narcotics.

In conclusion, there was insufficient evidence to convict Copeland on count one. Accordingly, count one is reversed. However, the judgment in regards to count two is affirmed.

RATLIFF, P. J., and NEAL, J., concur.