Timothy R. MARTIN, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 82S01–8905–CR–365.

Supreme Court of Indiana.

May 3, 1989.

John D. Clouse, Michael C. Keating, Laurie A. Baiden Bumb, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Wendy L. Stone, Deputy Atty. Gen., Indianapolis, for appellee.

## ON PETITION TO TRANSFER

SHEPARD, Chief Justice.

Appellant Timothy R. Martin was convicted after a jury trial of two counts of dealing in a schedule II controlled substance, a class B felony. Ind.Code § 35–48–4–2 (Burns 1985 Repl.). The trial court sentenced Martin to concurrent terms of six years.

In his appeal to the Court of Appeals, Martin raised four issues:

    I.  Whether Martin's discussion with a police officer about a possible plea bargain constituted a privileged communication;

    II.  Whether the trial court erred in admitting a statement from a police officer that a tablet with particular markings is usually determined to be Dilaudid;

    III.  Whether the trial court properly allowed an amendment of the information to conform the pleading to the evidence; and

    IV.  Whether the evidence was sufficient to support the conviction despite Martin's entrapment defense.

The Court of Appeals reversed the conviction and ordered a new trial. *Martin v. State* (1988), Ind.App., 528 N.E.2d 795. It held that when Martin spoke with Officer David Davies about a possible plea bargain, the communication was privileged and inadmissible. We grant transfer and vacate the Court of Appeals' opinion.

The evidence at trial showed that John White offered to assist narcotics investigator James Allison with some controlled drug buys in order to gain favorable treatment for his wife. She faced revocation of her probation.

On August 5, 1986, Allison and White went to appellant's trailer. White introduced Allison to Martin. Allison portrayed himself as a Dilaudid user and told Martin he could not get the drug from his usual source. He asked Martin if "fours are going for sixty-five," and Martin said yes. Allison gave Martin $65. Martin said he would have to leave to get the Dilaudid. After twenty minutes, Martin returned to the trailer. He gave Allison a small, yellow tablet with a "4" on one side and the letter "K" on the other. Allison told Martin he might need to buy more Dilaudid in the future.

The next day, Allison made another purchase from Martin. This transaction occurred at White's trailer, which was across the street from Martin's. Again Martin left for about twenty minutes. He returned and placed two tablets on the coffee table. White picked up the tablets and gave them to Allison when Martin left.

The Indiana State Police laboratory tested the tablets from the two buys and found them to be Dilaudid, the brand name for a synthetic opiate called hydromorphone. After Martin was arrested and charged, he called Evansville Police Officer David Davies to work out a deal. Martin offered to help apprehend his supplier in exchange for leniency. The trial court allowed Officer Davies to testify about these statements over Martin's objection.

*I. Communication with Police Officer*

Martin argues that his statements to Officer Davies were inadmissible as privi-

leged communications relating to a plea bargain. Davies testified, "[Martin] asked if there was any sort of deal that could be worked out for him to receive a lesser charge or lesser sentence in return for him doing cases on people that he bought drugs from." Davies asked some preliminary questions but never made an agreement. Martin claims that Officer Davies had some authority to arrange a bargain because he asked preliminary questions.

Statements made by a defendant as part of plea negotiations are not admissible in the trial of the charge. *Moulder v. State* (1972), 154 Ind.App. 248, 289 N.E.2d 522. This principle is also expressed in Ind.Code § 35-35-3-4 (Burns 1985 Repl.): "A plea agreement, or a verbal or written communication concerning the plea agreement, may not be admitted into evidence at the trial of the case, should the plea agreement not culminate in approval by the court."

Seven days after the Court of Appeals issued its opinion in this case, this Court held that statements made by a person prior to the existence of any charge against him to a police officer who had no authority to enter into a binding agreement were not part of the plea bargaining process. *Chase v. State* (1988), Ind., 528 N.E.2d 784. Justice DeBruler wrote for the Court:

> The plea bargaining process does not start until persons having the authority to make a binding agreement have agreed to negotiate. There must be an agreement, a meeting of the minds, after the leveling of a felony or misdemeanor charge, to enter into plea negotiations. A unilateral offer of evidence to induce a party to negotiate is not protected.

*Id.* at 786. Thus to qualify as a privileged communication, a statement must meet two requirements: first, the defendant must have been charged with a crime at the time of the statement, and, second, the statement must have been made to someone with authority to enter into a binding plea bargain.[1]

■ The defendant in *Chase* met neither of these two requirements. He had not been charged at the time of his statement and the officers with whom he spoke did not have authority to make a binding plea agreement. In this case, by contrast, Martin apparently had been charged at the time he made his statement.[2] Nonetheless, Davies did not have authority to negotiate on behalf of the prosecutor. He never entered into any sort of agreement with Martin. Martin's statements were a unilateral offer of evidence to induce the State to negotiate.

Officer Davies did not purport to have authority to enter into a plea agreement. Even though he asked some preliminary

---

1. The requirement that the person receiving the offer have authority to negotiate a plea agreement is consistent with the federal rules:

> [E]vidence of the following is not ... admissible against the defendant who made the plea or was a participant in the plea discussions:
>
> \*    \*    \*    \*    \*    \*
>
> (D) any statement made in the course of plea discussions *with an attorney for the government....*

Fed.R.Crim.P. 11(e)(6)(emphasis added). The emphasized language was added to the rule in 1979, effective in 1980.

The note to the 1979 amendment to subdivision (e)(6) makes clear that otherwise voluntary admissions to law enforcement officials are not inadmissible because they were made in the hope of obtaining leniency by a plea. The note discussed some cases that had interpreted the old rule in that manner. *See United States v. Herman,* 544 F.2d 791 (5th Cir.1977)(defendant in custody of two postal inspectors instigated conversation suggesting he would plead guilty to armed robbery if the murder charge was dropped; statement inadmissible under rule 11(e)(6) because defendant sought concessions in return for guilty plea). The Court of Appeals opinion relied upon *Herman. Martin,* 528 N.E. 2d at 797.

The note emphasized:

> This change ... does not compel the conclusion that statements made to law enforcement agents, especially when the agents purport to have authority to bargain, are inevitably admissible. Rather, the point is that such cases are not covered by the per se rule of 11(e)(6) and thus must be resolved by that body of law dealing with police interrogations.

Fed.R.Crim.P. 11, 1979 Amendment, Note to Subdivision (e)(6). Although the federal rule and its comments are not binding on this Court, we find the approach persuasive.

2. Officer Davies testified, "I spoke with [Martin] once right after his arrest and then he, several weeks later, contacted me by telephone." Later in his testimony, Davies said he asked Martin in which court he was charged.

questions, there is no reason to think he was in a position to bargain.

Appellant's statements to Officer Davies were admissible.

## II. *Hearsay*

Martin maintains that the trial court erroneously admitted hearsay evidence against him. The prosecutor asked Allison if he had ever seen a tablet marked with a "4" on one side and a "K" on the other side which was not later determined to be Dilaudid. Martin's counsel objected arguing that the question called for "hearsay as to what the lab ... results would show." The trial court overruled the objection, and Allison testified that such tablets have always come back identified as Dilaudid.

Hearsay is an out-of-court statement offered in court to prove the truth of the matter asserted within the statement. Although Martin suggests that Allison's statement is a "classic" example of hearsay, we are less certain. Allison had been a member of the narcotics division for four years. On nearly two hundred occasions, he had sent similar tablets as the ones he bought from Martin to the laboratory. Each time the scientists determined the substance was Dilaudid. Allison testified about his experience in the past and was not testifying about a particular statement made by the forensic chemist in the laboratory report. As such, the statement was not hearsay.

## III. *Amendment of Information*

Martin claims that the State should not have been allowed to amend the information to conform to the evidence. Count II of the information alleged that Martin "did knowingly deliver to James Allison, a Schedule II Controlled Substance...." The evidence at trial, however, established that Martin placed the tablets on the coffee table and White picked up the tablets before giving them to Allison. At the close of evidence, the State moved to amend Count II to provide that delivery was made to White instead of Allison. Martin argues that the amendment was impermissible under Ind.Code § 35-34-1-5 (Burns 1985 Repl.) and that it violates due process of law as guaranteed by the fourteenth amendment to the U.S. Constitution and article 1, § 13 of the Indiana Constitution.

Ind.Code § 35-34-1-5(a) states, "An ... information ... may be amended on motion by the prosecuting attorney at any time because of any immaterial defect, including ... (9) Any ... defect which does not prejudice the substantial rights of the defendant." One of the substantial rights the defendant is entitled to under fourteenth amendment due process is sufficient notice of the charges to enable the defendant to prepare.[3] When a conforming amendment appears not to affect any particular defense or change the positions of either of the parties, it does not violate these rights. *See, e.g., Ricketts v. State* (1986), Ind., 498 N.E.2d 1222.

In this case, the amendment was immaterial. The charge arose out of the same transaction with both White and Allison present. White held the drug for a minute or two before turning it over to Allison after Martin left. Allowing the prosecutor to amend the information to conform with this evidence did not prejudice Martin's substantial rights.

## IV. *Entrapment*

Martin maintains that the evidence shows he was entrapped into dealing Dilaudid. He claims he was only a drug user until White and Allison turned him into a dealer by asking him to procure drugs. He did not have the drugs on him, he points out, but had to ride his bike to make the purchases that Allison wanted.

Entrapment is defined by statute as follows:

(a) It is a defense that:

(1) The prohibited conduct of the person was the product of a law-enforcement officer, or his agent, using per-

---

3. Because Martin simply cited article 1, § 13 of the Indiana Constitution without providing any separate analysis, he has waived his argument under the state constitution. *St. John v. State* (1988), Ind., 523 N.E.2d 1353, 1355 (failure to provide argument for independent standard waives state constitutional law issue).

suasion or other means likely to cause the person to engage in the conduct; and

(2) The person was not predisposed to commit the offense.

(b) Conduct merely affording a person an opportunity to commit the offense does not constitute entrapment.

Ind.Code § 35–41–3–9 (Burns 1985 Repl.). The entrapment arguments in most cases focus on the adequacy of the evidence that the defendant was predisposed to commit the crime. Factors which indicate a predisposition to sell drugs include knowledge of drug prices, knowledge of drug sources and suppliers, use and understanding of terminology of the drug market, solicitation of future drug sales, and multiple sales to undercover officers. *Wallace v. State* (1986), Ind., 498 N.E.2d 961.

This Court applies the same standard to a review of these factors as it does to other challenges to the sufficiency of the evidence. *Everroad v. State* (1982), Ind., 442 N.E.2d 994, 1000. We look only to the evidence favorable to the verdict and all reasonable inferences that can be drawn from that evidence. *Loyd v. State* (1980), 272 Ind. 404, 398 N.E.2d 1260, *cert. denied,* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

Martin knew the price of Dilaudid and was readily able to procure the drug on two occasions. Officer Allison testified about Martin:

He made the comment that he wasn't used to copping ... and copping is another drug slang, which means to procure or to purchase a drug. Martin stated he wasn't used to copping without getting something.... Martin expressed surprise that we weren't gonna do the D's right there. D is street slang, an abbreviation for Dilaudid....

This testimony indicates that Martin used and was familiar with the language of the drug culture. It also shows that in his typical drug sale Martin expected to get a portion of the drug as a bonus for the sale. Martin asked for some Dilaudid after each sale. In regards to the last two factors used in *Wallace,* Martin did not actively solicit future drug sales, but he did make two sales to Allison and White. The evidence is sufficient to rebut Martin's entrapment defense.

The trial court is affirmed.

DeBRULER, GIVAN and PIVARNIK, JJ., concur.

DICKSON, J., concurs in result.