**Mary J. MORRIS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A05–9111–CR–366.**

Court of Appeals of Indiana,
Fifth District.

Dec. 16, 1992.

Ali A. Talib, Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Sue A. Bradley, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

SHARPNACK, Chief Judge.

Mary Morris appeals her conviction of dealing in a controlled substance. We affirm.

On appeal, Morris raises two issues which we restate as follows:

1. Did the trial court properly admit into evidence state's exhibit number 3, two vials which purported to contain Valium brand diazepam?

2. Was the evidence sufficient to support the judgment of conviction?

The following facts support the judgment. The administration of Fountain View Nursing Home, which was concerned about possible narcotics use and thefts by staff members, retained Kiser–Brown Investigative Group, a private detective agency, to conduct an investigation. Kiser–Brown arranged for one of its operatives ("Penman") to go undercover as a new employee of the nursing home. Penman eventually gained the confidence of many of the other staff members, including Morris, who was a registered nurse at the facility.

Morris told Penman that she was dating a drug addict for whom she had occasionally obtained narcotics. When Penman asked if she could obtain drugs for him, Morris agreed and on two separate occasions provided him with substances which she identified as restricted drugs or narcotics.

Penman reported these transactions to Kiser–Brown, which notified the Marion County Sheriff's Department and arranged to set up a controlled buy. The Sheriff's deputies who were to monitor the transaction fitted Penman with a listening device and provided him with a one hundred dollar bill to purchase the drugs.

On the evening of October 31, 1990, Morris and the operative met in a restaurant parking lot. Morris gave the operative two sealed vials labelled "Valium" in exchange for the hundred dollar bill. This transaction was taped and the tape, on which Morris told Penman she had gotten Valium for him, was played into evidence without objection. Penman then signalled the sheriff's deputies who arrested Morris.

At trial, the state offered its exhibit no. 3, the vials that Morris gave to Penman in exchange for the money. A chemist with the Marion County Crime Laboratory testified that, in her opinion, the vials contained Valium brand Diazepam. She admitted that she had not performed a chemical analysis on the contents of the vials, but she testified that the labelling and the manner in which the vials were sealed were consistent with the practices of the manufacturer of Valium. She further testified that the labelling and manner in which the vials were sealed would be extremely difficult to replicate.

Morris first argues that the trial court erred when it allowed into evidence the vials which she gave to Penman and when the court allowed the state's chemist to render an opinion as to the contents of

the vials. Without this testimony, Morris asserts, there is nothing in the record to show that the vials contained illicit drugs and thus no foundation for the admission of the evidence.

We have concluded that, under precedent of our supreme court and persuasive authority from other states, the state has produced a sufficient foundation for the admission of the vials. In *Warthan v. State* (1982), Ind., 440 N.E.2d 657, 659, the supreme court held that the identity of a substance can be proved by circumstantial evidence. In that case, the substance claimed to be LSD was never recovered as the transaction was not completed. The only evidence of the nature of what defendant had in his possession was his statements made during the preliminary discussion of the deal and the testimony by an officer that the defendant had some green paper with him that looked like the same type of paper on which LSD would be printed. The supreme court found that that evidence was not sufficient.

Here there is more. Here there are the two manufacturer-packaged, factory-sealed vials with original labelling identifying the contents as Valium, which was identified as a brand of diazepam by the state's expert chemist. While Indiana has not yet considered the probative value of such items, other jurisdictions have.

In *People v. Nelson* (1967), 82 Ill.App.2d 236, 225 N.E.2d 820, *affirmed,* 40 Ill.2d 146, 238 N.E.2d 378, the defendants were charged with acquisition of drugs by fraud and deceit. The defendants urged that since there had been no chemical analysis of the items purchased there was a failure to prove that the preparations obtained were narcotics (or more properly, exempt medicinal preparations). In rejecting this argument, the court wrote:

"The requirements of a chemical analysis in the case of an unidentified substance of unspecified origin without evidence of its nature and content is patent. The record in this case, however, discloses without contradiction, the following: (1) the defendant made the purchases using the trade name of the medicinal preparations; (2) that reputable pharmaceutical companies manufactured and distributed the preparation; (3) that the preparations were sold in the original container distributed by the manufacturer; (4) that the respective preparations have accepted standards or formulas specifying narcotics coming within the statutory concentration; (5) that the statute, Chap. 38, § 22–21 (Ill.Rev.Stat.1965) requires the manufacturer to label each package or container showing the kind, quantity and form of narcotic drug contained in the medicinal preparation; (6) that the containers obtained by the defendant were, in fact, labeled by the manufacturers pursuant to such statutory requirement. . . .

\* \* \* \* \* \*

A court must consider the purpose of the statute with regard to the medicinal preparations at issue, and the fact that they are the subject of immediate consumption. To announce the evidential requirement of chemical analysis of each preparation sold as an exempt medicinal preparation would not only render the legislative determinations for naught, but, would compound fatuity with the ridiculous. We believe that the circumstantial evidence is sufficient to satisfy the trier of fact of the guilt of the defendant, and that the prosecution has sustained its burden of proof under the evidence."

*Nelson,* 82 Ill.App.2d at 242–243, 225 N.E.2d at 823–824. It is the case that the foundational basis for the admission of the vials and the identification of their contents is not so thorough as in *Nelson,* but the essence of such a foundation is present and is sufficient.

In *Commonwealth v. Stasiak* (1982), 305 Pa.Super. 257, 451 A.2d 520, the defendant was charged with possession of controlled substances which he had stolen from a drug store. No chemical analysis was performed on the material. The court noted that proof that the materials possessed were controlled substances could be proven either by direct or circumstantial evidence. Referring to the case of *Commonwealth v.*

*Leskovic* (1973), 227 Pa.Super. 565, 307 A.2d 357, the *Stasiak* court said:

"In *Leskovic*, testimony by witnesses stating that appellants had sold them capsules called 'Christmas trees,' evidence that the description by a witness matched the description of a particular barbiturate and chemical analysis of a witnesses' blood which revealed a quantity of barbiturate in his bloodstream was enough. In the instant case, labels on many of the bottles, some of which were unopened, identified the drugs contained therein as being controlled substances. Because these labeled bottles were unopened, and because only four minutes had elapsed between the burglary and apprehension, the fact finder could reasonably infer that these bottles still contained the drugs which were indicated on the labels. Therefore, there was sufficient evidence to support the conviction for possession of controlled substances with intent to deliver."

305 Pa.Super. at 268, 451 A.2d at 525.

These cases illustrate that the information communicated by a manufacturer's original labelling, coupled with evidence that the packaging remains intact, is admissible to prove the nature of the contents of the package. Thus, the vials and the testimony of the chemist were admissible on their own merits.

In addition, defendant thrice admitted, in court, that she had delivered Valium to Penman, but protested that she was coerced into doing it. Despite Morris's assertions that she never identified the substance as Valium, but only referred to it as "drugs", it is clear from the context of the trial as a whole that the drug referred to is the Valium procured by defendant from her place of work. The following portions of the transcript lead to the conclusion that the defendant affirmatively admitted delivery of Valium:

"DIRECT EXAMINATION:

Q (defense counsel) All right. Ms. Morris, you've heard the testimony of Jerry Penman, the confidential informant in this case, who said that he delivered some drugs to you. Is that true? Or, you delivered drugs to him—I'm sorry—is that true?

A Under stress, and he threatened my life, this did take place.

\* \* \* \* \* \*

Q (defense counsel) Did you willingly deliver drugs to Jerry Penman?

A Not willingly, no.

Q Did you deliver those drugs because you were—you were being coerced?

A I thought he was—yes, I thought he was going to kill me any minute.... And, I just took it to where his harassing me and saying, 'get me this drug, get me that drug, and you'd better do what I say'—he was setting this whole thing up and just pushing me into doing it. But, I would never, you know—I've never been in trouble before in my whole life—I would never have done this.

\* \* \* \* \* \*

CROSS-EXAMINATION:

Q (Prosecutor) But, you—okay, you deny that you delivered drugs to Mr. Penman on the 29th, and earlier the day of October 31st, but you admit that you delivered Valium to him on October 31st?

A Well, by the time he got through with me I was so scared I thought, well, just go along with him this one time; and, if he keeps harassing me, I'm going to call the police.

Q Just this one time? And, you did do it on October 31st, 1990? You did deliver him drugs on October 31st, 1990?

A It was—he said it was for his own personal use.

Q Did you deliver drugs to him on October 31st, 1990? Yes or no, did you?

A Yes.

Q Thank you. Where'd you get these drugs?

A At—at the nursing home."

(Record, pp. 119–126). The testimony of the state's expert witness establishes that the Valium was a brand name form of diazepam, the "drug" defendant was charged with dealing in.

We acknowledge that Morris's statements may not have been probative of any

fact had they been made outside of the trial court without other corroborative evidence. *See, Warthan,* 440 N.E.2d at 661 (Extrajudicial confession is not sufficient to support a conviction in the absence of independent evidence of the *corpus delicti* ). Our courts have not, however, directly addressed the probative value of judicial, or in court, admissions. Other jurisdictions have considered the question and have concluded that a judicial admission requires no such support. *Manning v. United States* (10th Cir.1954), 215 F.2d 945; *State v. Staat* (1991), 251 Mont. 1, 822 P.2d 643. In the *Staat* case, the court said:

"In addition, at the suppression hearing appellant admitted to taking the note. A confession in criminal law is a voluntary statement made by a person charged with a crime acknowledging himself to be guilty of the offense charged. Black's Law Dictionary 369 (4th Ed.Rev.1968). A judicial confession is made before a magistrate or court during the course of the legal proceedings. Black's Law Dictionary 369 (4th Ed.Rev.1968). The prosecutor directly asks appellant whether he had taken the note. The appellant answered yes. This amounted to a judicial confession and no independent corroboration is required. 7 Wigmore on Evidence § 2071 (Chadbourn Rev.1978)."

251 Mont. at 8, 822 P.2d at 647.

Our supreme court in *Warthan* at least suggested that an judicial admission by a defendant is evidence of the substance's nature:

"A similar case is *Filler v. State,* (1981) Ind.App., 421 N.E.2d 1146, 1148, in which the defendant challenged the reliability of the chemical tests performed upon a recovered substance. After finding the test to be adequate the court noted additional evidence of the substances identity. Defendant had identified it during the sale *and* [original emphasis] *again at the trial* when crediting the possession and sale to a third party."

440 N.E.2d at 661 (emphasis added).

In sum, the admission of the vials and the identification of Valium as diazepam by the chemist was proper in the context of this trial where the defendant was taped during the transaction identifying what she had obtained as Valium; the defendant admitted in court that she had delivered to Penman Valium obtained from the medical stores of the nursing home where she was employed; and the vials delivered by her were labelled by the manufacturer as containing Valium and were intact as to labelling and seal.

▆▆▆ Morris next argues that the state failed to produce sufficient evidence to negate her defense of entrapment. In judging the sufficiency of the evidence negating the defense of entrapment, we apply the same standard as in all other challenges to the sufficiency of the evidence. *Martin v. State* (1989), Ind., 537 N.E.2d 491, 495; *Everroad v. State* (1982), Ind., 442 N.E.2d 994, 1000. When we review the evidence supporting a conviction, we may neither reweigh the evidence nor judge the credibility of the witnesses. *Washington v. State* (1982), Ind., 441 N.E.2d 1355, 1358. Where the evidence is in conflict, we are bound to view only that evidence which is most favorable to the verdict and judgment of the trial court. *Id.* If there is substantial evidence supporting the judgment, we must affirm. *Hutchinson v. State* (1985), Ind., 477 N.E.2d 850.

Pursuant to our statute, entrapment consists of two elements: 1) the crime must have been solicited by a law enforcement official; and 2) the person charged with the crime must not have been predisposed to commit the crime. Ind.Code § 35–41–3–9(a). Assuming, for the sake of argument, that Morris has introduced evidence suggesting that a law enforcement agent solicited the transaction at issue, the state bore the burden of producing evidence from which the trier of fact could have found beyond a reasonable doubt that Morris was predisposed to commit the crime. Evidence of multiple sales to undercover officers is sufficient to demonstrate predisposition. *Martin,* 537 N.E.2d at 495. Here, Penman testified that Morris had told him that she had previously obtained drugs for her boyfriend Kenny, who was an addict. In addi-

tion, Penman's employer testified without objection that Morris obtained drugs for Penman on three separate occasions. Under *Martin*, this evidence was sufficient to meet the state's burden of showing predisposition. There was sufficient evidence to support Morris's conviction.

We have found no error, and we therefore affirm the trial court.

AFFIRMED.

BAKER, J., concurs.

RUCKER, J., dissents with separate opinion.

RUCKER, Judge, dissenting.

I respectfully dissent.

In a case in which dealing in a controlled substance is charged, the State bears the burden of proving the substance sold is a proscribed drug within the applicable statutory definition. *Willis v. State* (1988), Ind. App., 528 N.E.2d 486. In my view, the State has failed to carry its burden.

First, I have no problem with the trial court admitting into evidence State's Exhibit Number 3, two vials which were purported to contain Valium brand Diazepam. Admission of exhibits into evidence is left to the sound discretion of the trial court and we will reverse only upon a showing of abuse. *Minnick v. State* (1989), Ind., 544 N.E.2d 471, *reh. denied.* Where, as here, a proper foundation has been laid and the evidence is reasonably connected to the defendant and the offense to which defendant has been charged, then no abuse of discretion exists. *See Maxwell v. State* (1980), Ind.App., 408 N.E.2d 158. However, in my view, the trial court erred by allowing the chemist to give an opinion concerning the contents of the vials.

Unlike the majority, I am unpersuaded by cases from other jurisdictions which hold or suggest that visual examination of a package containing a suspected controlled substance is sufficient to prove the contents of the package. Cases from our own jurisdiction do not support the majority's view. For example, in *Slettvet v. State* (1972), 258 Ind. 312, 280 N.E.2d 806, Slettvet, the defendant, was convicted of

possession of a dangerous drug, Lysergic Acid Diethylamide (LSD). At trial, the only evidence of the drug's identity was the testimony of the wife of the person to whom Slettvet had sold the alleged drugs. Her testimony concerned her husband's apparent physical reaction to the consumption of pills alleged to have contained LSD and that the pills were known as "purple haze acid." This evidence was deemed insufficient to prove that the substance was LSD because the witness had no experience with drugs. Our supreme court indicated:

> The State contends that proof of the nature of the substance can be proved by circumstantial evidence and we agree with this contention. (Cit. omit.) However, when the drugs themselves are not placed into evidence and there is no expert testimony based on a chemical analysis, then there must be testimony of someone sufficiently experienced with the drug indicating that the substance was indeed a dangerous drug.

*Slettvet*, 258 Ind. at 316, 280 N.E.2d at 808.

In this case, although the vials were properly introduced into evidence, there was no expert testimony based on chemical analysis indicating the contents of the vials were indeed dangerous drugs. More importantly, the chemist's opinion concerning the contents of the vials was unrelated to her skill, training and experience with drugs. When examined by the defense the chemist admitted she did not know what was in the vials. *Record* at 110. Rather, the chemist's opinion rested solely upon her visual examination of the vials which were labeled "Valium" and revealed no signs of tampering or alteration. This visual observation required no expert training; rather, it required little more than the ability to read and is not the type of "testimony of someone sufficiently experienced with the drug indicating that the substance was indeed a dangerous drug" anticipated in *Slettvet, supra.* There was no evidence here the manufacturer properly labeled the vials and indeed the vials very well could have contained nothing more than water.

In *Copeland v. State* (1982), Ind.App., 430 N.E.2d 393 the defendant was convict-

ed of two counts of dealing in Hydromorphine, a narcotic. On appeal, Copeland challenged one of the counts on the grounds of insufficient evidence, namely: the only evidence identifying the alleged drug was the testimony of a drug addict who identified the substance by sight and did not inject, inhale, or ingest the substance. We reversed Copeland's conviction on the challenged count indicating our examination of relevant case authority failed to reveal a conviction being sustained by merely visual identification alone. In that case we held "there must be some evidence establishing the distinguishable characteristics of the substance. To hold otherwise would seriously infringe upon the defendant's presumption of innocence and the standard of proof beyond a reasonable doubt." *Copeland, supra,* at 396.

In my view, the mandate of *Slettvet* and *Copeland* is clear. In order to sustain a conviction for an offense which requires proof of the identity of a drug there must be either expert testimony based on chemical analysis or testimony by one with sufficient experience with the drug. In the latter instance the opinion testimony must be based on a witness' physiological reaction to the drug. Here, there was no such testimony.

Absent the opinion testimony of the chemist, the remaining evidence before the trial court is not sufficient to sustain Morris' conviction. The majority takes the opposite view and places tremendous significance on Morris' trial testimony which, according to the majority, amounts to a "judicial admission" that she delivered Diazepam to Penman.

Under the circumstances of this case, Morris' testimony at best can be viewed as little more than lay opinion concerning the contents of the vials. As discussed above, such testimony without more is insufficient to sustain a conviction for an offense which requires the State to prove the existence of a controlled substance beyond a reasonable doubt. Moreover, in order to avoid the risk of convicting someone of a crime to which he or she has allegedly confessed, but which never occurred, a confession must be excluded unless the State introduces corroborating evidence establishing the corpus delicti. This requires independent evidence, apart from the admission, that a criminal offense was committed. *Clark v. State* (1987), Ind.App., 512 N.E.2d 223.

For the reasons set forth I would reverse the judgment of the trial court.