[Cite as *Romig v. Baker Hi-Way Express, Inc.*, 2012-Ohio-321.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

SANDRA ROMIG

        Plaintiff-Appellee

-vs-

BAKER HI-WAY EXPRESS, INC., ET AL

        Defendant-Appellee

JUDGES:
   Hon. W. Scott Gwin, P.J.
   Hon. John W. Wise, J.
   Hon. Julie A. Edwards, J.


Case No. 2011AP-02-0008

O P I N I O N

And

WORTHINGTON CYLINDER CORPORATION

        Defendant-Appellant

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Civil appeal from the Tuscarawas County Court of Common Pleas, Case No. 2009CT010080 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | January 27, 2012 |

APPEARANCES:

| For Plaintiff-Appellee | For Defendant-Appellant |
|---|---|
| Sandra Romig | Worthington Cylinder Corporation |
| ALLEN SCHULMAN, JR. | ERIC LARSON ZALUD |
| BRIAN L. ZIMMERMAN | CLARE R. TAFT |
| SCHULMAN ZIMMERMAN | BENESCH FRIEDLANDER COPLAN & |
| & ASSOCIATES | ARNOFF, LLP |
| 236 Third Street S.W. | 200 Public Square, Ste. 2300 |
| Canton, Oh  44702 | Cleveland, OH 44114-2378 |

KENNETH A. CALDERON
For Defendant/Appellee
Baker Hi-Way Express, Inc.
Hanna Campbell & Powell, LLP
3737 Embassy Parkway
Box 5521
Akron, OH 44334

CRAIG G. PELINI
Amicus Curiae in support of Appellant
Pelini, Campbell, Williams & Traub
Bretton Commons, Suite 400
8040 Cleveland Avenue N.W.
North Canton, OH 44720

*Gwin, P.J.*

{¶ 1} Defendant-appellant Worthington Cylinder Corporation appeals a judgment of the Court of Common Pleas of Tuscarawas County, Ohio, entered on a jury verdict in favor of plaintiff-appellee Sandra Romig individually and as the Executrix of the Estate of Robert L. Romig, Jr., deceased and a summary judgment in favor of defendants-appellees Baker Hi-Way Express, Inc. on Worthington's cross-claim. Worthington assigns four errors to the trial court:

{¶ 2} "I. THE TRIAL COURT ERRED IN GRANTING BAKER HI-WAY EXPRESS INC.'S MOTION FOR SUMMARY JUDGMENT AS TO APPELLANT WORTHINGTON CYLINDER CORPORATION'S CROSS-CLAIM FOR INDEMNITY, BREACH OF CONTRACT AND DECLARATORY JUDGMENT BECAUSE THE APPLICABLE AGREEMENT CONTAINS AN ENFORCEABLE INDEMNITY CLAUSE.

{¶ 3} "II. THE TRIAL COURT ERRED IN DENYING APPELLANT WORTHINGTON CYLINDER CORPORATION'S MOTION FOR A DIRECTED VERDICT.

{¶ 4} "III. THE TRIAL COURT ERRED IN DENYING APPELLANT WORTHINGTON CYLINDER CORPORATION'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT.

{¶ 5} "IV. THE TRIAL COURT ERRED IN DENYING APPELLANT WORTHINGTON CYLINDER CORPORATION'S MOTION FOR A NEW TRIAL, AND ALTERNATIVE MOTION FOR REMITTITUR."

{¶ 6} Appellee Sandra Romig (hereinafter "Romig") is the widow of decedent Robert Romig Jr. Decedent was employed by appellee Baker Hi-Way Express, Inc. ("Baker"), a motor carrier. Appellant Worthington Cylinder Corporation ("Worthington") manufactures propane tanks, or cylinders that are transported by motor carriers, such as Baker, to propane suppliers.

{¶ 7} Decedent was a veteran driver who had been driving trucks since 1968, logging over two million miles with vans and flat-bed trailers. Worthington's employee testified decedent had picked up 75 to 100 loads of empty propane tanks from Worthington during his employment. On June 17, 2005, decedent, acting within the course and scope of his employment with Baker, went to Worthington's facility to pick up a load of steel propane tanks. Decedent backed his tractor trailer into the loading dock for Worthington's employees to load with twelve "cradles" of propane cylinders and two skids of tank lids for shipment to delivery sites in New Hampshire. Decedent's trailer was a bi-level drop deck trailer, a flat-bed trailer in which the forward portion of the deck is higher than the rear deck.

{¶ 8} The cradles were designed to hold sixteen propane cylinders, weighing 141 pounds each, strapped together with steel bands on top of wooden slats. Once assembled each cradle weighed 2568 pounds and stood seven feet tall. Worthington designed and constructed this configuration.

{¶ 9} Decedent was present when Worthington's employees loaded the trailer using an over-head crane and a forklift. On the day in question, Worthington's employees loaded eight cradles and both skids of lids on the lower deck of the trailer and four cradles on the upper deck. Because of the dimensions of the deck and cradles, it was extremely difficult if not impossible to place four cradles on the upper deck without some overhang. On the day in question, the fourth cradle overhung the lower three by approximately one inch.

{¶ 10} At trial, there was differing testimony presented regarding Worthington's rules on the proper loading of the cradles. Worthington's dock manager testified the rule was only three cradles were to be put on the upper deck of a drop-deck trailer unless the driver specifically instructed the loader to place a fourth cradle on the upper deck. The dock manager testified even if the driver specifically asked the loader to place a fourth cradle on the upper deck, it was only to be placed on the upper deck if there was no overhang of the fourth cradle out over the lower deck. He testified there was never any reason for a fourth cradle to be loaded on the top deck of a trailer because it would always fit on the lower deck and four cradles on the top deck would be too high. The dock manager testified his workers were told to ask every single time before placing a fourth cradle on the top deck of a drop-deck trailer. If the loader saw a potentially dangerous condition, he was to point it out to the driver.

{¶ 11} Baker employees testified they had never heard of the three-cradle rule and were unaware of the danger of placing a fourth cradle on the upper deck. One Baker driver testified he asked a Worthington loader about a cradle that was overhanging the upper deck, and was told that was the way the cradles were loaded.

**{¶ 12}**     The Worthington employee who loaded the cradles that day testified decedent stood near the loader as the loader placed the cradles on the trailer. Each time, he asked decedent if the cradle was where decedent wanted it and if it was okay. Each time decedent told the loader it was all right. The Worthington employee testified the spot where the top deck ends and the lower deck begins was at decedent's eye level from where decedent was standing. The loader testified both he and decedent saw the overhang, and if decedent had asked him to re-position it, or place it on the lower deck, the loader would have done so. The loader testified decedent hooked and ratcheted the cradles to the trailer deck with securement straps, and as he did so, decedent was at eye level to the one inch overhang. Decedent signed two bills of lading which stated the material had been placed on the truck at the carrier's direction and in accord with the driver's instructions.

**{¶ 13}**     Decedent transported the load of propane tanks to New Hampshire without incident, and safely unloaded and delivered one skid of lids and six cradles, all from the lower deck of the trailer, to the Eastern Propane facility in Hudson, New Hampshire. Thereafter, decedent drove to an Eastern Propane facility located in Loudon, New Hampshire to unload the remaining six cradles of propane tanks and the skid of lids. Decedent removed the securing straps, but then an Eastern Propane employee asked decedent to move the tractor trailer to different area about fifty to one hundred feet away.

**{¶ 14}**     Decedent safely unloaded the skid of lids and the two cradles of propane tanks from the lower level of the drop deck trailer. While attempting to connect the mobile crane to the fourth cradle overhanging the upper deck, the cradle tipped,

crushing decedent against the crane and killing him. The Worthington employee who had loaded the fatal load testified when he heard about the accident, he immediately thought of the overhang of the fourth cradle on the upper deck.

{¶ 15} OCSA investigated Baker's involvement in decedent's death and issued a number of citations against Baker.

{¶ 16} On June 19, 2000, Worthington and Baker had entered into a written agreement for trucking services, including the transportation of propane tanks. The agreement carried an indemnity clause, which states:

{¶ 17} "6. CARRIER shall save, defend and indemnify and hold SHIPPER harmless against any and all claims for loss, liability, damages or expense imposed upon or claimed against SHIPPER, arising out of or in any way connected with operations by or for CARRIER under the terms hereof. CARRIER agrees to comply with all applicable state, federal and local laws, and CARRIER'S obligation to indemnify SHIPPER shall include any failure of the CARRIER or those acting for or under CARRIER to conform to any laws, ordinances, regulations or requirements of any governmental authority."

{¶ 18} Romig brought suit against Worthington for wrongful death and against Baker for an employer intentional tort. Worthington brought a cross-claim against Baker, asserting four counts. Count one asked for declaratory relief on the agreement between Baker and Worthington regarding Baker's duty to defend. Count two asked for declaratory relief regarding Baker's duty to indemnify Worthington under the terms of the agreement. Count three sounded in breach of contract for Baker's refusal to defend, indemnify, or hold Worthington harmless. Count four asked for

contribution and indemnification. Paragraph 28 stated: "Should Worthington be found liable to plaintiff, which liability is expressly denied, than Baker was actively and primarily negligent and otherwise responsible for plaintiff's claimed damages and therefore, Worthington is entitled to and seeks indemnification and/or contribution from Baker."

{¶ 19}     Baker moved for summary judgment on counts one, two and three of Worthington's cross-claim, arguing Baker's statutory immunity pursuant to the Ohio Workers' Compensation Act precluded any claims for contractual indemnity by Worthington relating to the death of Baker's employee. Worthington argued Romig's intentional tort claim against Baker stripped it of its Worker's Compensation immunity for all purposes in the lawsuit, including Worthington's claims. The court granted Baker's motion for summary judgment on April 29, 2009.

{¶ 20}     Worthington's motion for summary judgment as to Romig's claims, citing *United States v. Savage Truck Lines, Inc.* (1953), 209 F. 2d 442 and subsequent cases, argued the decedent's death was a result of his own actions and there was no evidence of negligence by Worthington. The court overruled Worthington's motion.

{¶ 21}     The matter proceeded to trial on Romig's negligence claim against Worthington, and the jury returned a verdict on her behalf finding decedent was not negligent, and awarding damages against Worthington for more than $3,000,000.

IV

{¶ 22}     In its fourth assignment of error, Worthington argues the trial court should have permitted it to introduce evidence that Baker's negligence was a proximate

cause of decedent's death, and to permit Worthington to raise the "empty chair" defense.

{¶ 23} In 2005 the legislature enacted sweeping tort legislation with the stated purpose of striking a balance between the rights of injured persons versus those parties unfairly sued in frivolous lawsuits. Among the changes adopted was the "empty chair" defense contained in R.C. 2307.23. The statute provides:

{¶ 24} "Requirements when determining percentage of tortious conduct attributable to party

{¶ 25} "(A) In determining the percentage of tortious conduct attributable to a party in a tort action under section 2307.22 or sections 2315.32 to 2315.36 of the Revised Code, the court in a nonjury action shall make findings of fact, and the jury in a jury action shall return a general verdict accompanied by answers to interrogatories, that shall specify all of the following:

{¶ 26} "(1) The percentage of tortious conduct that proximately caused the injury or loss to person or property or the wrongful death that is attributable to the plaintiff and to each party to the tort action from whom the plaintiff seeks recovery in this action;

{¶ 27} "(2) The percentage of tortious conduct that proximately caused the injury or loss to person or property or the wrongful death that is attributable to each person from whom the plaintiff does not seek recovery in this action.

{¶ 28} "(B) The sum of the percentages of tortious conduct as determined pursuant to division (A) of this section shall equal one hundred per cent.

{¶ 29} "(C) For purposes of division (A)(2) of this section, it is an affirmative defense for each party to the tort action from whom the plaintiff seeks recovery in this

action that a specific percentage of the tortious conduct that proximately caused the injury or loss to person or property or the wrongful death is attributable to one or more persons from whom the plaintiff does not seek recovery in this action. Any party to the tort action from whom the plaintiff seeks recovery in this action may raise an affirmative defense under this division at any time before the trial of the action."

{¶ 30} The goal is to ensure no defendant pays more than his or her fair share of the plaintiff's damages. A jury or the trial court in a bench trial must determine the percentage of tortious conduct attributable to every person or entity, regardless of whether that person or entity is named as a party defendant in the action.

{¶ 31} The statute contains no exceptions for employers or any other potential non-party who enjoys immunity from liability. The trial court found Baker was immune from liability for negligence pursuant to the Workers' Compensation Act.

{¶ 32} R.C. 4123.74 provides:

{¶ 33} "Employer's liability in damages

{¶ 34} "Employers who comply with section 4123.35 of the Revised Code shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, received or contracted by any employee in the course of or arising out of his employment, or for any death resulting from such injury, occupational disease, or bodily condition occurring during the period covered by such premium so paid into the state insurance fund, or during the interval the employer is a self-insuring employer, whether or not such injury, occupational disease, bodily condition, or death is compensable under this chapter."

{¶ 35} R.C. 4123.741 is entitled "Employee's liability in damages". It provides:

**{¶ 36}** "No employee of any employer, as defined in division (B) of section 4123.01 of the Revised Code, shall be liable to respond in damages at common law or by statute for any injury or occupational disease, received or contracted by any other employee of such employer in the course of and arising out of the latter employee's employment, or for any death resulting from such injury or occupational disease, on the condition that such injury, occupational disease, or death is found to be compensable under sections 4123.01 to 4123.94, inclusive, of the Revised Code."

**{¶ 37}** It appears there is no way to reconcile R.C. 2307.23's failure to exclude employer negligence with the present Workers' Compensation statutes.

**{¶ 38}** R.C. 1.51 states: "If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevails."

**{¶ 39}** Both statutes are general provisions.

**{¶ 40}** R.C. 1.52 provides "(A) If statutes enacted at the same time or different sessions of the legislature are irreconcilable, the statute latest in date of enactment prevails."

**{¶ 41}** The Ohio Constitution, Article II Section 35 provides for a workers' compensation system. It states in pertinent part:

**{¶ 42}** "For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment, laws may be passed establishing a state fund to be

created by compulsory contribution thereto by employers, and administered by the state, determining the terms and conditions upon which payment shall be made therefrom. Such compensation shall be in lieu of all other rights to compensation, or damages, for such death, injuries, or occupational disease, and any employer who pays the premium or compensation provided by law, passed in accordance herewith, shall not be liable to respond in damages at common law or by statute for such death, injuries or occupational disease.***"

{¶ 43}     In the recent case of *Ohio Bureau of Workers' Compensation v. McKinley*, 130 Ohio St.3d 156, 2011-Ohio-4432, 953 N.E.2d 814, the Ohio Supreme Court reaffirmed:

{¶ 44}     "***In this singular context, a claimant's ability to receive workers' compensation benefits is not based on any concept of fault, and a claimant's recovery of those benefits is governed by the provisions of the Workers' Compensation Act. See, e.g., *Holeton v. Crouse Cartage Co.* (2001), 92 Ohio St.3d 115, 119, 748 N.E.2d 1111 (workers' compensation laws are a unique social bargain in which employees give up their common-law remedy in exchange for greater assurance that they will receive reasonable compensation for a work-related injury, and employers in turn give up common-law defenses but are protected from unlimited liability); *Blankenship v. Cincinnati Milacron Chems., Inc.* (1982), 69 Ohio St.2d 608, 614, 23 O.O.3d 504, 433 N.E.2d 572.***" *McKinley* at paragraph 26.

{¶ 45}     We find the Ohio Constitution, statutory provisions, and case law mandates that Workers' Compensation is the exclusive remedy for an employee's workplace injury. One of the central purposes of the Workers' Compensation Act is to

avoid involving the courts in the relationship between employer and employee. In Ohio, there is no such thing as employer negligence, and a tortfeasor cannot raise the affirmative defense of the empty chair as to an employer for negligent acts.

{¶ 46} We find to include the employer's negligence in the allocation of fault is completely inconsistent with the Workers' Compensation system as structured by the constitution and the legislature and as construed by the courts.

{¶ 47} However, an employer's intentional tort is completely outside the purview of the W.C. system and does not enjoy immunity from liability. *Conley v. Brown Corporation of Waverly, Inc.* 82 OS3d 470, 1998-Ohio-194, 696 N.E.2d 1035.

{¶ 48} Worthington argues the *Conley* case not only allows it to introduce and/or argue evidence Baker committed an intentional tort, but asserts Romig's intentional tort claim removes Baker's statutory immunity for negligent acts. We do not agree.

{¶ 49} In *Conley,* an injured employee sued his employer for an intentional tort and also brought a products liability claim against the manufacturers of a press and some of its components. The employee and his wife eventually settled with one of the manufacturers, Rexcon Corporation, and assigned their cause of action against the employer. Rexcon's insurer subsequently brought suit on the intentional tort. Relying on *Taylor v. Academy Iron & Metal Co.* (1988), 36 Ohio St.3d 149, 522 N.E.2d 464, the court of appeals found the insurer did not have standing to assert the claim. *Taylor* held that only an employee or his legal representative may bring a civil suit against an employer alleging that the employer committed an intentional tort leading to an employee's work-related death, disease, or injury.  A third-party tortfeasor has no standing to bring an indemnification claim against an employer, acting in compliance

with the Ohio workers' compensation law, for damages suffered by an employee in the course of or arising out of his employment.

{¶ 50} The *Conley* court found *Taylor* created an array of problems, particularly when an employer intentional tort claim was involved, and concluded where an employer commits an intentional tort against an employee, the employer does not enjoy the statutory immunity provided under the Workers' Compensation Act. The court also found an assignee of the employee's claim for an employer's intentional tort can bring an action, and also found the insurer had a right for contribution against the employer if Roxcon is jointly and severally liable with the employer.

{¶ 51} *Conley* is distinguishable from the case at bar because in *Conley,* Roxcon's insurer stood in the shoes of the employee and asserted the employee's right to bring an intentional tort action against the employer. Nothing in *Conley* removes the employer's statutory immunity for negligence actions. Here, Worthington does not claim it has acquired Romig's right to bring the intentional tort, and its claim against Baker is for negligent breach of duty towards Romig, not Worthington. *Conley* does not strip Baker of its immunity from liability for negligence towards Romig. It does not hold that once an intentional tort is pled, the employer is fair game for any cause of action sounding in negligence, even if, as here, the allegations of intentional tort are withdrawn.

{¶ 52} Count IV of Worthington's cross claim against Baker said: "Should Worthington be found liable to Plaintiff, then Baker was actively and primarily negligent and otherwise responsible for Plaintiff's claimed damages and therefore, Worthington is entitled to and seeks indemnification and/or contribution from Baker." Among

Worthington's affirmative defenses is Paragraph 83. "Plaintiff's claims against Worthington are barred, by the acts of third parties."

{¶ 53} Romig argues Worthington did not raise the affirmative defense that Baker should be treated as a negligent nonparty who should occupy the "empty chair" at defense table. We do not agree. R.C. 2307.23 provides the affirmative defense can be raised at any time before trial. Even if we find the answer to be insufficient to raise the defense, the record indicates Baker and Worthington raised the issue at least by March 18, 2009, when Baker filed for summary judgment on the other counts of Worthington's cross claim, which referred to the contract between the parties, but Baker did not move for summary judgment on Count IV.

{¶ 54} Romig eventually dismissed her claim of intentional tort against Baker, advising the court the settlement amount was reasonable and in good faith because it was nigh unto impossible that Romig could prove Baker committed an intentional tort against her decedent. While the trial court never specifically found as a matter of law there was insufficient proof to send the issue to the jury, it acknowledged the difficulties in its judgment entry of January 14, 2010. It does not appear thereafter that Worthington pursued the issue of the intentional tort, and all of its motions and discussions are couched in terms of introducing evidence of Baker's negligence.

{¶ 55} Finally, Worthington argues the court should have permitted it to introduce evidence of the findings OSHA made regarding Baker's behavior as to decedent. In fact, the court permitted the jury to hear evidence about the OSHA investigation. Given that the employer's negligence was not a legitimate issue for the jury's consideration, we find the court did not err in limiting the evidence as it did.

**{¶ 56}** In conclusion, we find the court did not err in finding the statutory immunity shielded Baker from any assessment of negligence, and we further find Worthington abandoned the intentional tort issue as an affirmative defense pursuant to R.C. 2307.23.

I

**{¶ 57}** In its first assignment of error, Worthington argues the trial court erred in not finding the indemnity clause contained in the transportation contract between Worthington and Baker supersedes or defeats Baker's statutory immunity and requires Baker to defend and indemnify Worthington. The trial court granted summary judgment on the issue.

**{¶ 58}** Civ. R. 56 states in pertinent part:

**{¶ 59}** "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

**{¶ 60}** A trial court should not enter a summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts, *Houndshell v. American States Insurance Company* (1981), 67 Ohio St. 2d 427, 424 N.E.2d 311. The court may not resolve ambiguities in the evidence presented, *Inland Refuse Transfer Company v. Browning-Ferris Industries of Ohio, Inc.* (1984), 15 Ohio St. 3d 321, 474 N.E.2d 271. A fact is material if it affects the outcome of the case under the applicable substantive law, *Russell v. Interim Personnel, Inc.* (1999), 135 Ohio App. 3d 301, 733 N.E.2d 1186

**{¶ 61}** When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court, *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St. 3d 35, 506 N.E.2d 212. This means we review the matter de novo. *Doe v. Shaffer,* 90 Ohio St.3d 388, 2000-Ohio-186, 738 N.E.2d 1243.

**{¶ 62}** Baker cites *Kendall v. U.S. Dismantling Company* (1985), 20 Ohio St. 3d 61, as authority for the proposition a contractual indemnity clause does not waive an employer's Workers' Compensation immunity and render the employer liable for an employee's injuries unless the clause expressly states that the immunity is waived. In *Kendall,* the Supreme Court found a general agreement of indemnity with a third party that does not specifically express the employer's intent to waive its statutory immunity under the Workers' Compensation Act is ineffective. To be enforceable, the agreement must contain an express and specific waiver of immunity. Id., paragraph two of the syllabus.

**{¶ 63}** Worthington cites *Conley,* supra, as authority for the proposition once Romig alleged an intentional tort, the Workers' Compensation immunity was no longer available. For the reasons stated supra, we find Worthington's reliance on *Conley* is flawed.

**{¶ 64}** The first assignment of error is overruled.

II & III

**{¶ 65}** In its second assignment of error, Worthington argues the trial court should have granted its motion for directed verdict. In its third assignment of error, Worthington argues the court should have granted its motion for judgment notwithstanding the verdict. These two assignments of error are predicated on *United States v. Savage Truck Lines* (4th Cir. 1953), 209 F. 2d 442.

**{¶ 66}** Civ. R. 50 states:

**{¶ 67}** "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of a party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to each party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

**{¶ 68}** The reasonable minds test requires a court to determine whether there is any evidence of substantial probative value in support of the party's claim. *Ruta v. Breckenridge-Remy Company* (1982), 69 Ohio St. 2d 66, 69, 430 N.E. 2d 395.

**{¶ 69}** The test a trial court applies in ruling on a motion for judgment not withstanding a verdict is the same as that applied on a motion for directed verdict.

*Possen v. A.B.C. Motor Court Hotel, Inc.* (1976), 45 Ohio St. 2d 271, 275, 344 N.E. 2d 334.

**{¶ 70}** Our standard of reviewing a trial court's decision on a motion for directed verdict and a motion for a judgment notwithstanding the verdict are the same. We review the motions de novo because they present questions of law, not factual issues. *Nationwide Mutual Fire Insurance Company v. Guman Brothers Farm,* 73 Ohio St. 3d 107, 108, 1995-Ohio-214, 652 N.E. 2d 684.

**{¶ 71}** In *Savage,* supra, the court found that a carrier has the primary duty for safely loading goods onto its truck, but when a shipper assumes responsibility for loading the goods, it becomes liable for damages resulting from any defects in its loading that are latent, concealed, and not discernable to the carrier by ordinary observation. Id. at 445.

**{¶ 72}** Romig directs our attention to *Spence v. ESAB Group, Inc.* (C.A. 3, 2010), 63 F. 3d 212, where the Sixth Circuit Court of Appeals cited the Restatement of the Law of Torts, and held one who undertakes to render services is subject to liability to the other person for physical harm resulting from his failure to exercise reasonable care in performing the undertaking if the failure to exercise such care increases the risk of harm, or if the harm is suffered because of the other's reliance on the undertaking.

**{¶ 73}** Worthington and its amicus curiae, Transportation & Logistics, Inc., argue decedent had a duty to inspect the cargo, and, if and when he did so, the overhang of the fourth cradle was clearly visible to him. Amicus argues the Federal Motor Carriers Regulations place the ultimate obligation to secure and inspect the cargo on the driver. The Regulations require the driver to determine whether the cargo was

properly distributed and adequately secured before driving the commercial motor vehicle, and to inspect the cargo and devices used to secure the cargo a second time within the first 50 miles after beginning a trip so that the driver can adjust the cargo or the load securing devices as necessary. Worthington and its amicus argue the Regulations shift the burden from the shipper back to the driver as the person ultimately responsible for the security of the load he transports.

{¶ 74}    Romig replies even if a carrier's agent or driver inspected the load and signed a bill of lading acknowledging the shipment was proper, nevertheless, if the loading defect is latent and not one the driver could be reasonably expected to observe during his inspection, then the shipper is not exonerated from its negligence in loading. In *Georgia Kraft Company v. Termination Transport Company* (E.D.Tennessee 1972), 343 F. Sup. 1240, the court found the carrier has a duty to make a reasonable inspection and to observe and correct the defects or insecurities in loading that can be discovered during the course of a reasonable inspection.

{¶ 75}    While the condition of the load may be readily apparent, the danger presented by the condition may not be obvious through ordinary observation. Questions regarding whether a defect is latent or could have been discerned by the carrier's ordinary observation are questions for the jury.

{¶ 76}    At trial, the parties presented extensive evidence and argument regarding what caused the fourth cradle to shift, and whether decedent should have understood the hazard. The jury was the ultimate finder of fact, and this court cannot substitute our judgment if there is evidence in the record that supports the jury's

conclusions. *C.E. Morris v. Foley Construction Co.*(1978), 54 Ohio St.2d 279, 376 N.E.2d 578

{¶ 77}     The second and third assignments of error are overruled.

{¶ 78}     For the foregoing reasons, the judgment of the Court of Common Pleas of Tuscarawas County, Ohio, is affirmed.


By Gwin, P.J., and

Wise, J., concur

Edwards, J., dissents


_____

HON. W. SCOTT GWIN

_____

HON. JOHN W. WISE

_____

HON. JULIE A. EDWARDS

EDWARDS, J., DISSENTING OPINION

**{¶79}** I respectfully dissent from the majority's disposition of the fourth assignment of error.

**{¶80}** The majority notes in paragraph 30 that the goal of the "empty chair" doctrine is to ensure that no defendant pays more than his or her fair share of the plaintiff's damages, and the jury or trial court must determine the percentage of tortious conduct attributable to each person or entity, regardless of whether that person or entity is named as a party defendant in the action.

**{¶81}** R.C. 2703.23 contains no exceptions for an employer or any other potential non-party who enjoys immunity from liability. I would find that despite the fact that Baker is immune from liability for negligence pursuant to the Workers' Compensation Act, the jury still could assign a portion of the tortious conduct to Baker pursuant to the empty chair doctrine. The ruling of the majority does not ensure that no defendant pays more than his or her fair share of the plaintiff's damages; in fact, this decision forces Worthington to pay its own share plus Baker's share by not allowing Worthington to present any evidence of Baker's tortious conduct that contributed to the plaintiff's injuries.

**{¶82}** I would find that the trial court erred in finding Worthington could not introduce evidence that Baker's negligence was a proximate cause of the death of the decedent and erred in not permitting Worthington to raise the empty chair defense. I would sustain the fourth assignment of error and remand for new trial.

_____
Judge Julie A. Edwards

IN THE COURT OF APPEALS FOR TUSCARAWAS COUNTY, OHIO

FIFTH APPELLATE DISTRICT

SANDRA ROMIG                           :
                                       :
            Plaintiff-Appellee         :
                                       :
                                       :
-vs-                                   :        JUDGMENT ENTRY
                                       :
BAKER HI-WAY EXPRESS, INC., ET AL      :
                                       :
                                       :
            Defendant-Appellee         :        CASE NO. 2011AP-02-0008

And

WORTHINGTON CYLINDER CORPORATION

            Defendant-appellant


        For the reasons stated in our accompanying Memorandum-Opinion, the judgment of

the Court of Common Pleas of Tuscarawas County, Ohio, is affirmed. Costs to

appellant.


                                       _____
                                       HON. W. SCOTT GWIN

                                       _____
                                       HON. JOHN W. WISE

                                       _____
                                       HON. JULIE A. EDWARDS