

# IN THE

# Court of Appeals of Indiana

Betty A. Leon,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*



FILED

May 20 2026, 8:57 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

May 20, 2026

Court of Appeals Case No.
25A-CR-2182

Appeal from the Huntington Superior Court

The Honorable Jennifer E. Newton, Judge

Trial Court Cause No.
35D01-2407-F2-196

**Opinion by Judge May**
Judges Mathias and Felix concur.

**May, Judge.**

[1] Betty A. Leon appeals following her convictions of Level 2 felony dealing in methamphetamine,[1] Level 6 felony possession of a narcotic drug,[2] Level 6 felony unlawful possession or use of a legend drug,[3] Level 6 felony unlawful possession of a syringe,[4] Class A misdemeanor possession of a controlled substance,[5] and Class C misdemeanor possession of paraphernalia.[6] Leon raises two issues on appeal, which we restate as:

> 1. Whether the State presented sufficient evidence that Leon committed Level 6 felony unlawful possession or use of a legend drug; and

> 2. Whether Leon has demonstrated that her twenty-six-year sentence is inappropriate in light of her offenses and character.

We reverse Leon's conviction for Level 6 felony unlawful possession or use of a legend drug but affirm her twenty-six-year sentence as she has not demonstrated it is inappropriate.

---

[1] Ind. Code § 35-48-4-1.1(a)(2) & (e)(1).

[2] Ind. Code § 35-48-4-6(a).

[3] Ind. Code §§ 16-42-19-13 & 16-42-19-27(b).

[4] Ind. Code § 16-42-19-18(a) & (b).

[5] Ind. Code § 35-48-4-7(a).

[6] Ind. Code § 35-48-4-8.3(b)(1).

## Facts and Procedural History

[2] On the evening of July 22, 2024, Patience Gutierrez, Shawn McDonald, and Leon went shopping and then returned to the second-floor apartment where Leon lived alone. Leon went to her bedroom to change clothes, while Gutierrez and McDonald smoked methamphetamine from a pipe they found in the kitchen. When Leon did not return from changing, Gutierrez went to the bedroom and found Leon unconscious on the floor. Leon was "turning colors." (Tr. Vol. 2 at 111.) Gutierrez shook Leon, but Leon did not respond. Gutierrez attempted to wake Leon with ice, cold water, and Narcan, but none of them roused Leon. McDonald left the apartment, and Gutierrez called 911 for assistance.

[3] Huntington County Deputy Sheriff Brock Woodward ("Deputy Woodward") was dispatched to Leon's apartment. When he arrived, Gutierrez directed him to the bedroom, and he found Leon on the floor. He turned Leon's body so she was lying flat on the floor, and then he administered a dose of Narcan, checked Leon's pulse and breathing, and began performing a sternum rub to try to wake Leon. Soon thereafter, an emergency medical team arrived.

[4] When Deputy Woodward stepped out of the way for the paramedics, he began to scan the room for a syringe and uncapped needle that Leon may have used to administer illicit drugs. Next to the television, he saw "a glass smoking device with some burnt residue in it . . . that's normally used to smoke, um, illegal narcotics or drugs." (*Id*. at 124.) Then, as paramedics rolled Leon to her side

to work on her, they found an uncapped needle and syringe that contained clear liquid. Paramedics handed the syringe and needle to Deputy Woodward. When Deputy Woodward was able to step around paramedics to leave the bedroom, he learned no evidence bags were available for properly securing the syringe and needle, so he left them in Leon's apartment to be collected by police after a search warrant was obtained.

[5] Paramedics were eventually able to rouse Leon, who walked to the outdoor wooden landing outside her apartment. The first responders followed her out of the house, and Huntington Police Sergeant Ben Spurgeon closed and secured the door so that police could apply for a search warrant. Leon was transported to the hospital in an ambulance under police supervision. Huntington City Police applied for and received a search warrant based on the items police had seen in the apartment while assisting Leon.

[6] When police executed the search warrant, they seized the needle that had been found by paramedics; the pipe by the television in Leon's bedroom; a spoon with white powder and a crystal substance; a plastic bag of opaque crystal substance; a lid containing a similar white opaque crystal substance; small baggies; scales; a hollowed book secreting a spoon, several pipes for smoking methamphetamine, a white powdery substance, and a syringe; a book that police believed to be a drug sale ledger; numerous electronic devices; and several bottles of pills. All the suspected drugs were sent to the Indiana State Police lab, where a scientist determined Leon possessed Cyclobenzaprine pills,

Buprenorphine and Naloxone pills, and over forty-five grams of methamphetamine.

[7] The State charged Leon with Level 2 felony dealing in methamphetamine, Level 3 felony possession of a narcotic drug,[7] Level 6 felony unlawful possession or use of a legend drug, Level 6 felony unlawful possession of a syringe, Class A misdemeanor possession of a controlled substance, and Class C misdemeanor possession of paraphernalia.[8] A jury found Leon guilty of all charges, and the trial court entered the convictions accordingly. Following a sentencing hearing, the trial court imposed a 26-year sentence for Level 2 felony dealing in methamphetamine, a 2-year sentence for Level 6 felony possession of a narcotic drug, a 2-year sentence for Level 6 felony unlawful possession or use of a legend drug, a 2-year sentence for Level 6 felony unlawful possession of a syringe, a 365-day sentence for Class A misdemeanor possession of a controlled substance, and a 60-day sentence for Class C misdemeanor possession of paraphernalia. The court ordered all sentences served concurrently, for a total sentence of twenty-six years incarcerated.

---

[7] Ind. Code § 35-48-4-6(a) & (d)(1).

[8] The State also charged Leon with Class B misdemeanor possession of marijuana pursuant to Indiana Code section 35-48-4-11(a)(1), (App. Vol. 2 at 24), but it dismissed that charge prior to trial. (*Id*. at 12, 111, & 114.)

# Discussion and Decision

## 1. Sufficiency of the Evidence

[8] Leon first challenges the sufficiency of the State's evidence supporting her conviction of Level 6 felony unlawful possession of a legend drug. When we review sufficiency of the evidence, "[w]e consider only 'the probative evidence and reasonable inferences supporting the verdict to determine whether there is substantial evidence on which a reasonable trier of fact could find the [elements] beyond a reasonable doubt.'" *Carter v. State*, 273 N.E.3d 825, 832 (Ind. 2026) (quoting *Tate v. State*, 161 N.E.3d 1225, 1232 (Ind. 2021)). "A reviewing court must not reweigh the evidence; it can look only at the evidence, along with its reasonable inferences, tending to support the verdict." *Tate*, 161 N.E.3d at 1232.

[9] Leon argues the State failed to prove she possessed a legend drug. "Legend drugs" are those "subject to 21 U.S.C. 353(b)(1); or (2) listed in the Prescription Drug Product List[.]" Ind. Code § 16-18-2-199. Indiana law prohibits possession of a legend drug without a prescription or doctor's order. Ind. Code § 16-42-19-13. A person who "knowingly violates [that statute] commits a Level 6 felony." Ind. Code § 16-42-19-27(b).

[10] The State's charge against Leon alleged that she possessed "Cyclobenzaprine Hydrochloride, a legend drug," without a prescription. (Appellant's App. Vol. 2 at 21.) This charge was based on a pill found in an unmarked bottle in the bedside table at Leon's apartment. Leon does not challenge that she possessed

the pill at issue. Instead, she challenges whether the State proved the pill contained Cyclobenzaprine Hydrochloride.

[11] In support of this charge, the State presented the testimony of Brittany Borzych, who is a forensic scientist with the drug unit of the Indiana State Police lab. Borzych has "a Master's of Science in Forensic Science" from IUPUI, and she completed an additional one-year training program through the police lab after joining the drug unit. (Tr. Vol. 3 at 16.) She has analyzed 3,500 items to determine their identity. Borzych testified that "[r]eference identification is comparing a, um, marked pharmaceutical tablet or capsule to the . . . known references that are published." (*Id*. at 22.) She also affirmed that reference identification is generally accepted in the scientific community as an identification method. Borzych's Certificate of Analysis described the pills as "blue, round tablets containing markings 'U/12'." (Ex. Vol. 4 at 171.) Borzych testified she "visually examined" the pills at issue and their "reference and markings indicated the presence of Cyclobenzaprine. No confirmatory analysis was performed on the tablets." (Tr. Vol. 3 at 25-26.)

[12] Indiana law has long provided "the identity of a drug can be proved by circumstantial evidence." *Copeland v. State*, 430 N.E.2d 393, 396 (Ind. Ct. App. 1982) (discussing possession of Dilaudid). To be sufficient, the circumstantial evidence "must consist of opinion testimony of someone sufficiently experienced with the drug who identifies the substance." *Id*. In 1982 when *Copeland* was decided, the court noted: "Our examination of the relevant case law has failed to reveal a conviction which was sustained by merely visual

identification alone." *Id.* Ten years later, in *Morris v. State*, a conviction was upheld based upon a chemist's testimony related to a visual inspection of a vial of valium; however, the vials were factory sealed and in their original packaging with original labeling, and Morris admitted delivering "drugs." 604 N.E.2d 665, (Ind. Ct. App. 1992).

[13] Leon argues that, because "counterfeit pills pressed to mimic certain tablets are common[,]" the actual "content of pills could only be determined through confirmatory lab testing." (Br. of Appellant at 9.) In support of this argument, Leon encourages us to follow a recent line of cases from our Court that reversed marijuana convictions because legal hemp and illegal marijuana could only be distinguished by chemical analysis, not by sight or smell. *See Lakes v. State*, 224 N.E.3d 373, 375 (Ind. Ct. App. 2024) (reversing possession of marijuana conviction because State provided no evidence "the concentration of delta-9-THC exceeds 0.3%"); *Fritz v. State*, 223 N.E.3d 265, 277 (Ind. Ct. App. 2023) (reversing possession of marijuana conviction because State failed to provide evidence of the delta-9-THC concentration in the cigarettes possessed by Fritz); *Toledo Rojo v. State*, 202 N.E.3d 1085, 1089-90 (Ind. Ct. App. 2022) (reversing possession of marijuana conviction because officer's testimony "regarding sight and smell" was incapable of proving the material possessed was illegal marijuana), *trans. denied*; *Fedij v. State*, 186 N.E.3d 696, 709 (Ind. Ct. App. 2022) (reversing possession of marijuana conviction because, while the State can, in theory, prove the identity of a drug based on circumstantial evidence, illegal marijuana cannot be distinguished from legal hemp without testing to

determine "the percent concentration of THC in the substance"). According to Leon, "[t]his principle applies with particular force to legend drugs" because counterfeit pharmaceuticals have become "a significant problem." (Reply Br. of Appellant at 8.)

[14] Detective Johnson testified that, when police find pills in an unmarked bottle, they use a reference source like drugs.com to try to identify the pill based on its physical appearance. He acknowledged, however, that police would not know whether the defendant possessed "counterfeit pills . . .unless we sent them to the lab and the lab confirmed" their chemical composition. (Tr. Vol. 2 at 235.) Counterfeit pills are "made to look like something else, usually, like hydrocodone." (*Id.* at 236.) Detective Johnson testified that he had encountered counterfeit pills in the past, and those pills had contained fentanyl and were "most often" colored blue. (*Id.* at 176.) No one asked Detective Johnson whether those counterfeit blue pills containing fentanyl were round and pressed with a U/12 like the pill herein alleged to be Cyclobenzaprine. No one asked Borzych whether she could distinguish authentic pills from counterfeit pills based on visual inspection. No one asked Borzych or Detective Johnson whether they had ever encountered a counterfeit Cyclobenzaprine pill. No one asked Borzych how certain she was that the pill was Cyclobenzaprine.

[15] The issue that Leon raises is an important one, as it calls into question whether forensic scientists can validly infer that pills are whatever drug their appearance matches in a pharmaceutical reference manual. Given the increasing frequency

of counterfeit pills, does that inference continue to be valid?  At what frequency?  For which kinds of pills?  Under what circumstances?

[16]   Herein, for example, the pill at issue was mixed with other kinds of pills in an unmarked bottle in the bedside table of a drug dealer, rather than being with other identical pills in a bottle with a valid prescription label for Cyclobenzaprine – does that distinction matter for the inferences that can be drawn from appearance or for the necessity of chemical analysis?  Also, Borzych received five samples of alleged drug materials from the police, and she chemically tested four of the five – what necessitated chemical analysis of the Buprenorphine and Naloxone pills, but not the Cyclobenzaprine?  Perhaps a valid scientific reason exists for distinguishing the evidence necessary to identify each of these types of drugs, but no such explanation was provided on the record.

[17]   Instead, we are left to rely on assumptions about the validity of reference identification that may not be accurate in the age of counterfeit medications.  As Judge Mathias declared in the context of illegal marijuana being indistinguishable from legal hemp, if "[t]he statute proscribes possession of a specific substance, and if the State seeks to obtain a conviction under that statute, it is entirely the State's burden to prove that the proscribed substance was in fact in the defendant's possession." *Fedij*, 186 N.E.3d at 709.  "A conviction may not be based upon guess or speculation." *Absher v. State*, 162 N.E.3d 1141, 1158 (Ind. Ct. App. 2021) (internal quotation omitted).  The State did not fill the gaps in its evidence to demonstrate the blue tablet in Leon's

bedside table contained Cyclobenzaprine.  The State could have filled these gaps with chemical analysis or with additional testimony about why chemical analysis was not necessary in this circumstance.  We accordingly reverse Leon's conviction of Level 6 felony possession of a legend drug.  *See Slettvet v. State*, 280 N.E.2d 806, 809 (Ind. 1972) (reversing conviction for possession of dangerous drugs because State failed to prove the nature of the substance and because requiring the State to prove each element beyond a reasonable doubt "has long been a metaphysical cornerstone of our criminal law").

## 2. Inappropriateness of the Sentence

[18]  Leon also challenges her twenty-six-year sentence as inappropriate.  We may revise a sentence when we find, "after due consideration of the trial court's decision . . . that the sentence is inappropriate in light of the nature of the offense and the character of the offender."  Ind. App. R. 7(B).  Because sentencing is a function of the trial court, its judgment "should receive 'considerable deference.'"  *Oberhansley v. State*, 208 N.E.3d 1261, 1267 (Ind. 2023) (quoting *Cardwell v. State*, 895 N.E.3d 1219, 1222 (Ind. 2008)).  This deference can only be "'overcome by compelling evidence portraying in a positive light the nature of the offense' and 'the defendant's character.'"  *Lane v. State*, 232 N.E.3d 119, 122 (Ind. 2024) (quoting *Oberhansley*, 208 N.E.3d at 1267).  Appellate review of a sentence is "to leaven the outliers . . . but not to achieve the perceived 'correct' result in each case."  *Nicholson v. State*, 221 N.E.3d 680, 684 (Ind. Ct. App. 2023) (quoting *Cardwell*, 895 N.E.2d at 1225), *trans. denied*.  The burden of proving a sentence is inappropriate falls to the

defendant. *Littlefield v. State*, 215 N.E.3d 1081, 1089 (Ind. Ct. App. 2023), *trans. denied*.

[19] Our review is "holistic" and takes into consideration "the whole picture before us." *Lane*, 232 N.E.3d at 127. Appellants need not prove their sentence is inappropriate for both their character and offense, but "to the extent the evidence on one prong militates against relief, a claim based on the other prong must be all the stronger to justify relief." *Id.* Our determination "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell*, 895 N.E.2d at 1224.

> [O]ur goal is to determine whether the appellant's sentence is inappropriate, not whether some other sentence would be more appropriate. We consider not only the aggravators and mitigators found by the trial court, but also any other factors appearing in the record.

*George v. State*, 141 N.E.3d 68, 73-74 (Ind. Ct. App. 2020) (internal citations omitted), *trans. denied*.

[20] We first note that Leon argues a twenty-six-year sentence is inappropriate for her conviction of Level 2 felony possession of methamphetamine. However, our task is to address "the forest – the aggregate sentence – rather than the trees – consecutive or concurrent, number of counts, or *length of the sentence on any individual count*." *Brown v. State*, 10 N.E.3d 1, 8 (Ind. 2014) (emphasis added herein) (quoting *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008)). We thus

consider whether Leon's aggregate twenty-six-year sentence is inappropriate for all her convictions in this case.

[21] To assess the appropriateness of a sentence in light of the nature of the offenses, we begin by looking at the sentencing parameters defined by our legislature. *Hamilton v. State*, 233 N.E.3d 461, 485 (Ind. Ct. App. 2024), *trans. denied*. Leon was convicted of one Level 2 felony, for which our legislature set the sentencing range at ten to thirty years, with an advisory sentence of seventeen-and-one-half years. Ind. Code § 35-50-2-4.5. Leon remains convicted of two Level 6 felonies, and the sentencing range for each is six to thirty months, with an advisory sentence of twelve months. Ind. Code § 35-50-2-7(b). Leon was also convicted of one Class A and one Class C misdemeanor. The sentence for a Class A misdemeanor must be "not more than one (1) year[,]" Ind. Code § 35-50-3-2, and for a Class C misdemeanor must be "not more than sixty (60) days[.]" Ind. Code § 35-50-3-4. The trial court imposed 26 years for the Level 2 felony, 2 years for each of the Level 6 felonies, 365 days for the Class A misdemeanor, and 60 days for the Class C misdemeanor, and ordered them served concurrently.

[22] Leon possessed over forty-five grams of methamphetamine, which is more than four times the ten grams required to be convicted of the Level 2 felony. *See* Ind. Code § 35-48-4-1.1(e) (defining offense as a Level 2 felony if the "amount of the drug involved is at least ten (10) grams"). The sheer quantity of methamphetamine Leon possessed makes her offense more egregious than the typical Level 2 felony possession of methamphetamine offense. In light of the

four other convictions that occurred simultaneous therewith, we cannot say twenty-six years is inappropriate for Leon's three felonies and two misdemeanors.

[23] Turning now to Leon's character, we note one relevant consideration is a defendant's history with the juvenile justice or criminal justice system. *See Denham v. State*, 142 N.E.3d 514, 517 (Ind. Ct. App. 2020) (referencing "criminal history"), *trans. denied.* Leon had no juvenile history, but she was sentenced for public intoxication in 1994, battery in 1994, operating a vehicle with BAC over .15 in 2004, check deception in 2006, driving while intoxicated in 2006, false informing in 2007, battery resulting in bodily injury in 2015, operating while intoxicated in 2016, domestic battery in 2016, and possession of methamphetamine and possession of a narcotic drug in 2022. The presentence investigation report summarizes those as "eight (8) misdemeanor convictions [and] three (3) felony convictions[.]" (Appellant's App. Vol. 2 at 234.) Throughout those cases, the State filed nine petitions to revoke Leon's probation. Leon reported she had been using both stimulants and heroin or other opiates every day for at least seven years, and Gutierrez's testimony indicated Leon regularly allowed friends to consume drugs in her apartment. The Indiana Risk Assessment System placed Leon in a "HIGH risk category to reoffend." (*Id.* at 237) (capitalization in original). We cannot say a twenty-six-year sentence is inappropriate based on Leon's criminal history, difficulties cooperating with probation requirements, and risk to reoffend.

## Conclusion

[24] Because the State failed to present evidence that the blue tablets contained Cyclobenzaprine, rather than being counterfeit, we reverse Leon's conviction for possession of a legend drug. However, Leon has not demonstrated her sentence is inappropriate for her offenses and character, so we affirm her twenty-six-year sentence. Accordingly, we reverse in part and affirm in part.

[25] Reversed in part and affirmed in part.

Mathias, J., and Felix, J., concur.

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General
Indianapolis, Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana