**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

**FILED**

Dec 19 2012, 8:44 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**VICTORIA L. BAILEY**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| TOBY HICKS, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No.  49A02-1104-CR-328 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Carol J. Orbison, Judge
Cause No.  49G22-1001-MR-157

**December 19, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Toby Hicks ("Hicks") appeals his conviction, following a jury trial, of Murder, a felony,[1] and Robbery, as a Class C felony.[2]

We affirm.

**Issues**

Hicks presents two issues for our review, which we restate as:

1.      Whether the prosecutor committed misconduct and deprived Hicks of a fair

        trial; and

2.      Whether Hicks's sentence is inappropriate under Appellate Rule 7(B).

**Facts and Procedural History**

On the evening of December 28, 2010, Steven Pence ("Pence") and his friend Steven Scott ("Scott") were at Pence's house at 11458 Windhaven Court in Indianapolis. They went out for drinks and eventually ended up at Weebles, a bar near the intersection of 30th Street and Shadeland Avenue in Indianapolis. At Weebles, Pence, who was legally blind, repeatedly mentioned that he wanted to "get a girl," and that he had $2,000 in his wallet. (Tr. at 86.) Hicks, seated nearby, told Pence he knew some showgirls from P.T.'s Show Club, and that it would cost only $250. During Pence's conversation with Hicks, Scott expressed his discomfort with the situation. Hicks made some calls from a cell phone and explained

---

[1] Ind. Code § 35-42-1-1.

[2] I.C. § 35-42-5-1.

that an escort, Malissa Sims ("Sims"), would meet them at Pence's house. Pence, Scott, and Hicks left the building and traveled together in Scott's truck to Pence's house.

After entering Pence's house, Hicks gave travel directions over the phone to Sims. Scott told Pence that he did not want to participate in any activity involving Sims, and after a brief argument, Scott left Pence's house. When Scott returned a short time later, Sims, accompanied by her niece A.W., and A.W.'s friend K.R., had already arrived, and her car was parked in the driveway. A.W. and K.R. remained in the car. Scott and Pence got into another argument, and Scott left and drove home to Martinsville.

Following Scott's departure, Pence and Sims went upstairs to Pence's bedroom. Hicks brought out to Sims's car Pence's Colts jacket and a trash bag filled with some of Pence's belongings. As Sims danced for Pence, Hicks entered the room with a cast-iron skillet in his hand and swung it down hard, hitting Pence on the left side of his face. Sims immediately fled the room, and while she was running down the stairs, she heard two more loud thuds, similar to the sound a gourd makes when crushed. As she escaped through the front door, she heard glass breaking.

Sims jumped in her car and attempted to drive away with A.W. and K.R., but had difficulty operating the vehicle. While Sims struggled to put the car in gear, Hicks jumped in the car and told her to "[d]rive, Bitch[,] [d]rive." (Tr. at 198.) Hicks had taken Pence's wallet, and took $100 from the wallet and gave it to Sims while she drove. Sims saw credit or bank cards in the wallet with Pence's photo on them.

After stopping at two gas stations and the home of Hicks's brother, Sims, Hicks,

3

A.W., and K.R. arrived at Sims's home. There, Hicks unloaded onto Sims's bed several items taken from Pence's home, including the Colts coat, a PlayStation 3 game, and a ring. At Hicks's request, Sims, accompanied by A.W. and K.R., drove Hicks to a bar near Brazil, Indiana, where they dropped him off. Hicks took the trash bag with Pence's belongings and Pence's Colts coat, and walked across a field towards a nearby trailer park. Police later found and arrested Hicks near a laundromat in Lawrence, Indiana.

On January 5, 2010, the State charged Hicks with Murder, a felony; Felony Murder;[3] and Robbery, as a Class A felony. The State later alleged Hicks to be an habitual offender.[4] A jury trial was conducted on January 10 through January 14, 2011, at the conclusion of which the jury found Hicks guilty of all counts as charged. On March 21, 2011, the trial court conducted a consolidated habitual offender and sentencing hearing during which it entered judgments of conviction against Hicks for Murder, and Robbery, as a Class C felony; found him to be a habitual offender; and sentenced him to an aggregate sentence of ninety-five years imprisonment.

Hicks now appeals.

**Discussion and Decision**

<u>Prosecutorial Misconduct</u>

Hicks contends that the prosecutor committed misconduct by displaying to the jury a photo not in evidence showing Hicks with a tattoo of a revolver on his left arm, and by

---

[3] I.C. § 35-42-1-1.

[4] I.C. § 35-50-2-8.

altering that photo at the request of Hicks's counsel in view of the jury so as to remove that part of the photo showing Hicks's tattoo.

To review a properly preserved claim of prosecutorial misconduct we must determine whether the prosecutor engaged in misconduct, and if so, whether the misconduct had a probable persuasive effect on the jury's decision, and whether there were repeated occurrences of misconduct, which would evince a deliberate attempt to improperly prejudice the defendant. Ritchie v. State, 809 N.E.2d 258, 268-69 (Ind. 2004), reh'g denied, cert. denied.

To properly preserve a claim of prosecutorial misconduct, the defendant should request an admonishment from the trial court, and if the defendant believes that to be insufficient, he should move for a mistrial. Cain v. State, 955 N.E.2d 714, 721 (Ind. 2011). Failure to object to alleged prosecutorial misconduct precludes appellate review of the claim unless the alleged misconduct amounts to fundamental error. Booher v. State, 773 N.E.2d 814, 817 (Ind. 2002). Here, Hicks neither requested an admonishment nor moved for a mistrial. (Appellant's Br. at 11; Tr. at 718-24.) Instead, he asserts that the prosecutor's conduct amounted to fundamental error.

To demonstrate fundamental error, the defendant must establish not only prosecutorial misconduct, but also the additional grounds for fundamental error. Booher, 773 N.E.2d at 818. Fundamental error is an extremely narrow exception that allows a defendant to avoid waiver of an issue. Cooper v. State, 854 N.E.2d 831, 835 (Ind. 2006). To be fundamental error, the misconduct must have made a fair trial impossible, or have been a clearly blatant

5

violation of basic and elementary principles of due process presenting an undeniable and substantial potential for harm. Booher, 773 N.E.2d at 817 (internal quotation and citations omitted). This exception is available only in "egregious circumstances." Brown v. State, 799 N.E.2d 1064, 1068 (Ind. 2003). Furthermore, error is harmless when the conviction is supported by substantial independent evidence of guilt which satisfies the reviewing court that there is no likelihood that the erroneously admitted evidence contributed to the conviction. Smock v. State, 766 N.E.2d 401, 407 (Ind. Ct. App. 2002).[5]

The State's evidence discloses that Hicks struck Pence on the head with a cast-iron skillet with such force that it split into four pieces. This occurred while Pence, legally blind, was discussing a price with Sims. The evidence further discloses that, prior to striking Pence, Hicks gathered several items of Pence's property and loaded them into the trunk of Sims's car. As such, the State presented substantial independent evidence of Hicks's guilt, and we are satisfied that there is no likelihood that the displayed evidence contributed to the conviction. Smock, 766 N.E.2d at 407. Even assuming without deciding that the prosecutor displayed to the jury a photo not in evidence or altered it before the jury, any error that may have resulted from the prosecutor's conduct was harmless.

---

[5] We note that Hicks's counsel cites to Martin v. State, 528 N.E.2d 795 (Ind. Ct. App. 1988), in which transfer was granted and the opinion vacated. See 537 N.E.2d 491 (Ind. 1989). When transfer is granted, the Court of Appeals opinion is held for naught and has no precedential value. See Ind. Appellate Rule 58(A); Wontorski v. Williamsburg Mobile Homes, Inc., 794 N.E.2d 433, 433 (Ind. 2003). We further remind counsel that our current standard for harmless error under Smock and its progeny is contrary to the version of the standard to which counsel cites. See Bates v. State, 495 N.E.2d 176, 178 (Ind. 1986); Cudworth v. State, 818 N.E.2d 133, 142 (Ind. Ct. App. 2004), trans. denied; Moore v. State, 827 N.E.2d 631, 639 (Ind. Ct. App. 2005), trans. denied.

Sentence

Hicks also contends that his aggregate ninety-five year sentence is inappropriate, and therefore requests that we revise his sentence.

This Court has independent authority to review the appropriateness of sentences under the Indiana Constitution and Appellate Rule 7(B). In Reid v. State, the Indiana Supreme Court reiterated the standard by which we independently review criminal sentences:

> Although a trial court may have acted within its lawful discretion in determining a sentence, Article VII, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of a sentence through Indiana Appellate Rule 7(B), which provides that a court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender. The burden is on the defendant to persuade us that his sentence is inappropriate.

876 N.E.2d 1114, 1116 (Ind. 2007) (internal quotation and citations omitted).

Our supreme court has stated that "sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." Cardwell v. State, 895 N.E.2d 1219, 1222 (Ind. 2008). Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented. See id. at 1224. One purpose of appellate review is to attempt to "leaven the outliers." Id. at 1225. "Whether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." Id. at 1224.

Here, Hicks was convicted of Murder, a Felony, and Robbery, as a Class C felony. In addition, his Murder sentence was enhanced based upon his status as an habitual offender.

7

The sentencing range for Murder runs from forty-five to sixty-five years, with a statutory advisory sentence of fifty-five years. I.C. § 35-50-2-3(a). The sentencing range for Robbery, as a Class C felony, runs from two to eight years, with an advisory sentence of four years. I.C. § 35-50-2-6(a). The habitual offender enhancement may add to a defendant's sentence "not less than the advisory sentence for the underlying offense, nor more than three (3) times the advisory sentence for the underlying offense," with a maximum permissible enhancement of thirty years imprisonment. I.C. § 35-50-2-8(h). Here, Hicks was sentenced to the maximum sixty-five year term for Murder with the maximum thirty-year habitual offender enhancement added thereto, and the maximum term of eight years imprisonment for Robbery. The trial court ran the enhanced Murder and Robbery sentences concurrently, for an aggregate term of ninety-five years imprisonment.

Hicks brutally murdered Pence by striking him on the head with a cast-iron skillet with such force that the skillet split into four pieces. Hicks struck Pence without warning while Pence was negotiating a price with Sims, a female escort whom Hicks had arranged to come to Pence's home. The blow caused Pence's brain to swell, which eventually deprived Pence's brain of oxygen, causing his death. Pence did not die immediately, however, instead making his way downstairs from the bedroom in which Hicks had struck him, leaving a trail of blood in his wake.

Pence, who was legally blind and was intoxicated when Hicks encountered him, had stated that he had $2000 to spend for an escort. After striking Pence with the skillet, Hicks took money and property and forced Sims to drive him to Brazil, Indiana, where he remained

8

for some time before exchanging the stolen PlayStation 3 game for another game. Taken together, Hicks's conduct in committing the offenses of murder and robbery warrants a sentence above the statutory advisory term established by our legislature.

We turn now to Hicks's character. Hicks admitted to criminal activity while he was a juvenile in Montana, and was arrested twice as a juvenile in Marion County, Indiana. As an adult, Hicks has been convicted in unrelated cases of felony-level Criminal Recklessness, Battery, and Theft. Hicks was on parole at the time of the instant offenses, and has violated probation on two occasions. Hicks has a long history of numerous disciplinary infractions while incarcerated, ranging from simple disruptive conduct to violent conduct including battery, battery with bodily fluids, intimidation, and attempted rioting, frequently leading to his placement in segregated portions of the jail. During the proceedings at the trial court in this case, Hicks was charged with several other offenses as a result of his conduct in jail.

While in jail awaiting trial Hicks was diagnosed as being schizoaffective, and during the pendency of the habitual offender phase of the proceedings Hicks was diagnosed with Antisocial Personality Disorder. He has some history of alcohol and marijuana use, and previously has been prescribed medication for depression and anxiety. Hicks has never held any form of employment and had an unstable upbringing, with parents who were frequently absent and significant time spent living in state-run juvenile facilities. However, none of this diminishes the brutal nature of his offenses here or offsets the nature of his conduct prior to and during the proceedings in this case. We therefore cannot conclude that the trial court's imposition of the maximum terms of imprisonment for each of his offenses, yielding an

9

aggregate term of imprisonment of ninety-five years, is inappropriate in light of the nature of Hicks's offenses and his character.

## Conclusion

Hicks has failed to demonstrate fundamental error stemming from the prosecutor's conduct. Furthermore, Hicks's sentence is not inappropriate in light of the nature of the offenses and his character.

Affirmed.

VAIDIK, J., and BROWN, J., concur.